THE STATE v. ROY C. TOOMBS, Appellant.—25 S. W. (2d) 101.

Division Two, February 19, 1930.

*Ernest Oakley, Roy C. Woods* and *Abbott, Fauntleroy, Cullen & Edwards* for appellant.

*Stratton Shartel*, Attorney-General, and *Smith B. Atwood*, Assistant Attorney-General, for respondent.

824

WHITE, J.—An indictment was returned in the Circuit Court of City of St. Louis, charging that defendant, while president of the International Life Insurance Company, caused to be signed, with felonious intent to issue the same, in violation of Section 3350, Revised Statutes 1919, a certificate for three thousand shares of stock in that corporation, not authorized by the charter and by-laws. On a jury trial he was found guilty, April 13, 1929, and his punishment assessed at a fine of $3,000 and imprisonment for three years in the penitentiary. Appeal to this court followed.

The indictment places the offense on January 17, 1928. In August, 1927, the Great Southern Life Insurance Company of Dallas, Texas, through Mr. A. P. Greenwood, its president, loaned $500,000 to Toombs & Daly Company. The note representing this indebtedness was executed by the defendant Roy C. Toombs, and was secured collaterally by common and preferred stock in the Toombs & Daly Company. This loan was to mature on February 7, 1928. In January, 1928, before the maturity of the note, an exchange of securities took place. The note was renewed, and instead of the Toombs & Daly stock, Mr. Greenwood, for the Southern Company, received nine thousand supposed shares of stock in the International Life Insurance Company, shown by three certificates for three thousand shares each. The Toombs & Daly stock was returned to Mr. Toombs. Mr. Greenwood first received two certificates of three thousand shares each. He advised Mr. Toombs that he had not sent the agreed amount. Then followed the transaction complained of, the issuance of nine thousand shares of stock in the International Life Insurance Company.

The issuance of three certificates, numbered D-11009, D-110010 and D-110011, as testified to by W. G. Darst, secretary of the International Life Insurance Company, F. E. Bohle, assistant secretary, and W. F. Grantges, first vice-president, occurred in this way: A meeting of the board of directors of the International Life Insurance Company was held in St. Louis January 17th. After the meeting was over, Mr. Toombs came into the office of the secretary and asked him to issue to him, Toombs, three certificates of stock for three thousand shares each. Darst accordingly made them out and signed them. Mr. Grantges passed through the office, was stopped, and asked to sign and did sign those certificates.

It appears that Mr. Greenwood, upon receiving the certificates, demanded what he termed "supporting papers," which should accompany the collateral, papers showing that Mr. Toombs had acquired the stock in the International *Life Insurance* Company from the *International* Company, a holding company. It included a certified copy of the resolution of the board of directors of the latter company to that effect. It appears that supporting papers were received by Mr. Greenwood, and that such as he had at the time of the trial were in the possession of the Southern Company at Dallas, Texas.

Of the three certificates thus issued, D-11009 is the one set out in the indictment. At the time these certificates were issued, the International Life Insurance Company was authorized to issue 37,500 shares, of the par value of twenty-five dollars each, of the stock of said corporation. At that time 37,500 shares of said stock were outstanding. This appears from the evidence of Mr. Bohle, who had charge of the books of the concern, and from the evidence of Mr. Brenaaun, who had charge of the assets of the Life Insurance Company after it went into the hands of the receiver. The books then showed that 37,500 shares were outstanding on January 17, 1928. This also appears from other evidence. In fact it is not seriously disputed that the three certificates, including D-11009, were over-issues.

The State introduced the certificate of Ben C. Hyde, Superintendent of Insurance, to the effect that January 17, 1928, the authorized and paid-up capital of the International Life Insurance Company was $937,500, divided into 37,500 shares of the par value of twenty-five dollars each. Also the certificate of Charles U. Becker, Secretary of State, to the same effect. At the time the three certificates for nine thousand shares, including the certificate mentioned in the indictment, were issued, no old stock was exchanged for them, no transfer was made. The secretary of the corporation, Mr. Darst, testified that there were 37,500 shares issued and outstanding. Then this question was asked of him: "Q. Was that the amount of the full paid, authorized capital stock of the company? A. Yes." That question and answer were repeated in another form. This evidence was not objected to.

Mr. Darst further testified that there was no time prior to January 17, 1928, including that day, when any stock was transferred from the holding company to the Life Insurance Company, for which this certificate D-11009 was issued. No record was made of the issuance of that certificate. Neither it nor either of the other two was placed on the ledger.

The defendant offered evidence attempting to show good faith in causing the certificate mentioned to be issued. The International

*Life Insurance* Company was a Missouri corporation with a capital stock as above stated. The International Company was a holding company, incorporated under the laws of Delaware. It was organized for the purpose of liquidating life insurance companies and fire insurance companies. It also handled securities, selling and buying them. Its capital stock consisted of 460,565 shares of preferred stock, and 2,000 shares of common stock. On January 17, 1928, the defendant Toombs was the owner of practically all that common stock. Toombs had purchased the 2,000 shares of stock in the holding company for $3,101,211. He had borrowed $2,000,000 in cash in June, 1927, to pay for it. The holding company at that time owned as its principal asset 23,624 shares of the International Life Insurance Company stock. Some of the shares of the Life Insurance Company, amounting to over 11,000 shares, were in escrow in certain banks in St. Louis. It appears that these belonged to the holding company, and it had access to the boxes in which these shares were placed. The situation of the other shares owned by the holding company is not shown. On January 5, 1928, at a regular meeting of the board of directors of the holding company, a resolution was adopted, whereby that company sold to Toombs, the defendant, 15,924 shares of the stock of the Life Insurance Company for the price of ninety dollars per share. It was resolved that such stock be delivered to Toombs at such times and in such blocks and numbers of shares as he might from time to time desire, and be paid for from time to time as he desired. It was further resolved that the company accept from Toombs, in payment of said stock, certain municipal bonds which had been duly approved, etc. Then it was resolved that, pending the delivery of the bonds, the president of the holding company was authorized to receive in lieu of said bonds interim certificates or receipts, and upon the delivery of the interim certificates the president of the holding company was authorized to deliver to Toombs the certificates of stock, duly endorsed, representing the number of shares paid for by such interim certificates. At that same meeting one John C. Martin tendered his resignation as president and director, and George E. Toombs, brother of the appellant, was elected to fill the vacancy.

It is claimed by the appellant that in this transaction, by which the defendant was said to have bought stock in the *Life Company* from the holding company, to be paid for in municipal bonds, the interim certificates were to be received from Toombs by the holding company in lieu of those bonds. It seems to be assumed that Toombs had bought the stock and had paid for it and was thereby in good faith entitled to it at the time the certificate complained of here was issued. Appellant in his brief explains it thus: "These interim receipts were in the nature of receipts creating bailment, and placed

Mr. Toombs in position of holding said shares of stock in such a way that, if he did not account for the bonds and securities referred to, he would be subject to prosecution for embezzlement.'' The evidence does not show the amount nor the value of the interim certificates. There is no evidence in the record to show that the holding company ever received the interim certificates or the securities, which Toombs was to pay for the stock claimed to have been bought. Those bonds and securities, the alleged consideration for such stock, were never turned over. The purchase was in fact never completed. The inference is unavoidable that no shares were free that could be delivered in pursuance of that purchase. The holding company was unable to deliver, hence the interim certificates indicated a contract to be performed at some time in the future, a contract which in fact was never performed. There is nothing in the evidence to show that Toombs was ever in a position to acquire and cancel shares of stock for which certificate D-11009 was issued. The most that appellant can claim from this evidence was that in good faith he was attempting to buy shares which would be canceled and reissued in the form in which these certificates he is charged with unlawfully causing to be issued were made out. It was a question for the jury to determine whether the defendant intentionally caused an over-issue of stock in the International Life Insurance Company. The points made by the appellant for reversal hardly bear upon the sufficiency of this evidence to show the fact that the issuance of the certificate mentioned in that indictment was an over-issue. It was entirely worthless to Mr. Greenwood of the Great Southern Insurance Company. On the contrary, appellant asserts that he was not guilty on entirely different grounds.

I. The appellant first contends that the proof fails to make out a case in violation of Section 3350, Revised Statutes 1919. That statute is as follows:

"Sec. 3350.—*Fraudulent Acts of Agents of Corporations.*—Every officer or agent of any incorporated company or corporation, formed or existing under or by virtue of the laws of any of the United States, who shall within this State willfully and designedly sign or procure to be signed, with intent to issue, sell or pledge, or cause to be issued, sold or pledged, or shall willfully and designedly issue, sell or pledge, or cause to be issued, sold or pledged, any false or fraudulent certificate or other evidence of the ownership or transfer of any share or shares of the capital stock of such incorporated company or corporation, or any false or fraudulent bond or evidence of debt of such incorporated company or corporation, or any certificate or other evidence of the ownership

or transfer of any share or shares in such incorporated company or corporation, or any instrument purporting to be a certificate or other evidence of ownership or transfer of such share or shares, or purporting to be such bond or evidence of debt, the signing, issuing, selling or pledging of which shall not be authorized by the charter and by-laws of such incorporated company or corporation, or some amendment thereof, shall be deemed guilty of a felony, and shall be punished by a fine not exceeding three thousand dollars, and imprisonment in the state prison for a term not less than three nor more than seven years.''

The plain reading of that statute would indicate that the offense is in doing the acts complained of when such acts were not authorized by the charter and by the by-laws; that is, by *both* the charter and the by-laws. Appellant, however, presents a peculiar construction of that statute, and bases a long argument upon it. He cites Sedgwick on Construction of Statutory Law, where that author speaks of an old English statute, providing that no indenture of apprenticeship should be valid and effectual unless approved by two justices of the peace, under their hands and seals. It was held that such indenture approved under the hands of such officers was not valid unless also under their seals. Appellant argues that in this case, in order to prove the defendant guilty, the acts forbidden must have been in violation of both the charter and the by-laws.

The difference is this: in the case cited by Sedgwick, there was an attempt to show the indenture was *valid*. In this case the State is attempting to show that the certificate issued was *invalid*. The defendant is not declared by the statute to be innocent unless both the charter and the by-laws were violated, but guilty *unless* both authorized his act. It required *both* the hands and seals to witness the indenture of apprenticeship, and the absence of either would render the indenture invalid. In the present case, if the acts complained of were done without being authorized by the charter *and* the by-laws, if either was absent, it was unlawful.

Appellant spends a large part of his brief in arguing that since the by-laws were not introduced in evidence, there is nothing to show the act performed was in violation of the by-laws. In other words, there is no proof that any provision of the by-laws was violated. All of which is entirely superfluous, because, if the acts done were in violation of the charter, they were in violation of the statute.

Appellant further argues that, since the charter and the charter alone determines the number and kind of shares of preferred and common stock, which a corporation might issue, then there is no showing of violation of the charter, because the charter was not introduced in evidence. Mr. Darst, the secretary of the Interna-

tional Life Insurance Company, testified, as set out above, that 37,500 shares of stock was the amount of authorized capital stock of the company. That evidence was not objected to on the ground that the charter itself was the best evidence, or on any other ground. The witness stated the fact twice. No error is assigned now to the introduction of that evidence. The State Superintendent of Insurance and the Secretary of State, each certified to the same fact. The trial went through from beginning to end without any suggestion that it was not sufficiently proved that the authorized capital stock of the corporation was 37,500 shares. In the absence of objection this oral testimony from the secretary was ample proof of the fact. If objection had been made that it was not competent, it would have been easy to make record proof. It was not necessary to introduce the articles of association. The certificate of incorporation was introduced. The certificates of the Superintendent of Insurance and the Secretary of State were in evidence. In fact, the trial proceeded throughout on the theory that the International Life Insurance Company was properly incorporated with an authorized capital stock of 37,500 shares; that those shares on January 17, 1928, were all outstanding; that the issuance of the nine thousand shares, and especially of the three thousand shares represented by the certificate named in the indictment, were an over-issue; that no certificates were presented and canceled; that it was neither an exchange for old stock nor was it new stock. It was, as stated by the secretary, an over-issue. The evidence supported that theory of the State.

II. Appellant further argues that the over-issue of stock does not come within the condemnation of Section 3350, because that section is directed to acts of officers of the corporation which are within the corporate powers of the corporation but not within the terms of its charter and by-laws; that an over-issue of stock is contrary to law and could not be authorized by the charter or by-laws, while Section 3350 condemns acts which *could* be authorized by the charter and by-laws, but are not so authorized. The attempt is to draw a distinction between the unlawful acts and acts unauthorized.

Sections 6104 and 6105, Revised Statutes 1919, provide that the declaration filed by incorporators of a life insurance company shall comprise a copy of their charter and it shall set forth, among other things, the amount of the capital stock and the number of shares into which it shall be divided, etc. Appellant complains that these articles of association were not introduced, and therefore the powers of the charter were not proven. As shown above, such proof was made without objection. What is the charter of corporations? Ap-

pellant aptly quotes from Stockard on Missouri Corporation Law, Section 60, page 36, as follows:

"The charter of a corporation having capital stock and formed under the general laws of the State, consist of the articles of association, the certificate issued thereon by the Secretary of State, and the statute under which it is formed."

The articles of association, therefore, alone, are not the charter. The statutes and the certificate of incorporation, which was in evidence, constitute an essential part of a charter. Any act in violation of the *statute,* which gives life to the corporation, is in violation of the charter.

Appellant, in arguing that Section 3350 applies only to a case where the charter and by-laws might have authorized the act complained of but did not, takes refuge in a generality. He says no charter or by-laws *could* authorize an over-issue of stock. That is a generalization. We are dealing with a specific instance. The charter in this case could have authorized the issuance of certificate D-11009. That is, the charter could have authorized the issuance of stock in excess of 37,500 shares so as to include D-11009. The violation of the law in this case is solely and only because it is a violation of the charter, and Section 3350 is the law violated.

Appellant argues and cites authorities to the effect that an over-issue of stock is not stock. But the restriction in Section 3350 is not limited to actual stock, authorized or unauthorized, but it covers any instrument *purporting* to be a certificate of stock. The certificate mentioned in the indictment, D-11009, purports to be a valid and authorized certificate of stock for three thousand shares, properly signed by the proper officers and attested by the seal of the corporation.

Further, the distinction which appellant seeks to draw between the violation of law and a violation of the charter within the law is over-refined as applied to the facts here. Because the act complained of was contrary to law as a general principle does not make it any the less contrary to the charter as a specific violation. The issuance of D-11009 was contrary to the charter, which limited the issue, whether otherwise a violation of the law or not. To say that Section 3350 is limited to a violation of the charter where, if the charter permitted it, it would be within the law, does not advance the defendant's position, because, if the charter had permitted it in this instance, that is, if the articles of association had provided for a larger number of shares, it would have been within the charter and within the law. It was strictly in violation of law only because it was in violation of the charter. Appellant says that "Section 3350 cannot be enlarged so as to include the doing of something which the charter and by-laws of no corporation created by the laws of

the State of Missouri or any other state could authorize," thereby assuming that the act charged here is one which no charter and no by-laws could authorize, meaning, of course, an over-issue of stock, but the over-issue in this instance is an over-issue only because the charter did not authorize the issuance of that additional stock. It was not a genuine certificate of ownership because the charter limited the number of shares of stock to be issued, and it was beyond the limit.

The language used in Section 3350 covers all cases of violation of the regulatory provisions of a corporation prescribing the duties and functions of its officers, as well as violations of the fundamental law of corporations generally. There is nothing in the language of the section which would limit its operation to irregularities in the acts of the officers which were otherwise within the law. It would be a strange attitude on the part of the lawmakers if they intended to provide for punishment of an officer who exceeded his specific functions laid down in the charter which the corporation adopted to control his acts, and allow to go unpunished a much more serious act of an officer which arose to a violation of the law as well as the charter and by-laws. There may be other statutes dealing with a crime like the one charged here. But the appellant has pointed to none. It is possible that under the statutes of Texas the defendant was guilty of a crime in depositing bogus securities with Mr. Greenwood. Whether defendant's act was in violation of a specific law, or merely invalid because no law authorized it, the Legislature had the power to forbid it and affix a penalty to it, and did do that in definite terms.

III. Appellant contends that the indictment is fatally defective for several reasons. It is as follows, omitting caption:

"The Grand Jurors of the State of Missouri, within and for the body of the city of St. Louis, now here in court, duly impaneled, sworn and charged, upon their oath present, that Roy C. Toombs on or about the 17th day of January, 1928, at the city of St. Louis aforesaid, as the president of the International Life Insurance Company, a duly organized and existing corporation under the laws of the State of Missouri; that said Roy C. Toombs without being authorized by the charter and by-laws of said corporation or any amendment thereof, then and there unlawfully, wilfully, designedly and feloniously did procure one W. F. Grantges, Vice-President, and one W. G. Darst, Secretary of the said International Life Insurance Company, a corporation, to sign a certain false and fraudulent certificate of ownership of three thousand shares of the capital stock of the said International Life

Insurance Company, a corporation as aforesaid, with the felonious intent then and there to issue said false and fraudulent certificate, numbered D-11009, which said false and fraudulent certificate is in words and figures, as follows, to-wit:

" 'NUMBER                              SHARES

" 'D-11009                               3000

" 'Incorporated under the laws of the State of Missouri.

" 'INTERNATIONAL LIFE INSURANCE COMPANY OF ST. LOUIS, MISSOURI.

" 'This certifies that R. C. TOOMBS is the owner of three thousand shares of the capital stock of the INTERNATIONAL LIFE INSURANCE COMPANY, of the par value of twenty-five dollars each, fully paid and non-assessable, transferable only on the books of the company in person or by Attorney, upon the surrender of this certificate properly indorsed.

" 'IN WITNESS WHEREOF, the said company has caused this certificate to be signed by its duly authorized officers and its corporate seal is to be affixed, at St. Louis, Mo., this 17th day of January, 1928.

" 'W. G. DARST,
Secretary.

" ' (Seal)

" 'W. J. GRANTGES,
Vice-President.'

and that the above described certificate was impressed with the corporate seal of the said INTERNATIONAL LIFE INSURANCE COMPANY.

"Against the peace and dignity of the State.

"I. JOEL WILSON,
Assistant Circuit Attorney."

It will be seen that it is substantially in the language of Section 3350. It is a general rule that an indictment in the language of the statute is sufficient where the statute sets out the essential elements of the offense charged. Almost every offense defined in the statutes has been before this court on informations and indictments in the statutory language, and in nearly every instance they have been held sufficient.

Appellant quotes at length from The Encyclopaedia of Law and Procedure, statements held to be legal conclusions and therefore insufficient unless explanatory facts are pleaded. All those statements occur in the construction of pleadings in civil cases. Indictments following the language of statutes defining crimes in general terms must be construed upon a different principle, as we shall see. Further in the same volume from which the quotation is taken (31 Cyc. 764),

we find this general principle in relation to the cure of such defects after verdict:

"Where there is any defect, imperfection, or omission in a pleading, whether of substance or form, which would have been a fatal objection upon demurrer, yet if the issue joined be such as necessarily required, on the trial, proof of the fact so defectively or imperfectly stated or omitted, and without which it is not to be presumed that either the judge would direct the jury to give, or the jury would have given, the verdict, such defect, imperfection, or omission is cured by the verdict."

The counsel who presents these points in this court did not try the case. No objection of any kind was made to the indictment before trial, nor at any other time until the case reached this court. We held in State v. Carson, 323 Mo. 46, 18 S. W. (2d) 457, that, since Section 4080 as it appears in the Laws of 1925, page 198, abolished the motion in arrest, all points which formerly might have been saved in a motion in arrest must now be saved in a motion for new trial. The indictment here is not mentioned in the motion for new trial. Appellant presents his objections to that indictment for the first time in this court. We have repeatedly held that after verdict the indictment will not be held bad unless it fails in some essential averment necessary in description of the crime. It has been said that the test of its sufficiency after verdict is whether it is sufficiently specific so that a conviction or acquittal upon it may bar another proceeding for the same offense. The indictment described the offense as causing to be signed a certain certificate of ownership of three thousand shares of stock in the International Life Insurance Company, No. D-11009, and that particular certificate of stock is set out *in haec verba* in the indictment. Certainly no other prosecution could be maintained for the signing or issuance of that particular certificate. [State v. Carson, 18 S. W. (2d) 1. c. 462.]

IV. Appellant specifically asserts that the indictment is defective in using the words "false" and "fraudulent," and in failing to aver the facts which constitute the fraudulence and falsity.

It is clear that the legislative intent in Section 3350 was to cover different offenses, or to express in different forms the same act which would constitute the offense aimed at. An analysis of the section shows that the *act* condemned is:

"Wilfully and designedly sign or procure to be signed with intent to issue," etc., or "wilfully issue, sell or pledge," etc.

The *things* to which the act is applied are:

(1) "Any false *or* fraudulent certificate or other evidence of ownership or transfer of any share or shares of capital stock."

(2) "Or any false *or* fraudulent bond or evidence of debt."

(3) "Or any certificate or other evidence of ownership or transfer of any share or shares," etc., "or any instrument purporting to be a certificate or other evidence of ownership or transfer of such share or shares, or purporting to be such bond, or evidence of debt, the signing, issuing, selling or pledging of which shall not be authorized by the charter and by-laws," etc.

Thus the act condemns the issuing of any false or fraudulent certificate of stock or any false or fraudulent bond or evidence of debt. Then in order to cover transactions which might not be technically designated as false or fraudulent, it condemns the issuance of any certificate of stock or bond or evidence of debt which has not been authorized by the charter and by-laws. The lack of authorization by the charter and by-laws in (3) is specific, and used instead of "false and fraudulent" in (1) and (2). Manifestly a certificate of stock might be false and yet not fraudulent; it might be fraudulent and yet not false in a certain sense. It might be neither false nor fraudulent and yet not be authorized by the charter and by-laws. That last sweeping statement is intended to include acts which would not be covered by the first part of the section.

Further, the use of the words "false and fraudulent" in the information is the pleader's characterization or estimate of the quality of the certificate, a copy of which follows. It was false in fact because, and only because, it was not authorized by the charter. It was fraudulent because signed with intent to issue. Those facts are averred. They are not conclusions but statements of fact, definite and clear. It would add nothing to it to say in what particular the defendant has exceeded the authority of the charter and by-laws. The particular certificate of stock, D-11009, was an over-issue, not authorized by the charter. Appellant argues the case throughout on the theory that that is all the evidence tends to show.

Of course, in an indictment charging the obtaining of property by false pretenses, the facts constituting the false pretenses must be stated. In an indictment charging murder, the individual murdered must be named or described. In an indictment charging larceny, the thing stolen must be named or described. Now in this case the object of the offense was the causing of the issuance of the certificate which is set out *in haec verba*. No objection was made at any point in the trial, or preceding the trial, that the defendant was not fully apprised of the nature and cause of the accusation. No fact appeared in the evidence which could possibly tend to surprise him. He knew that the particular fact constituting his offense was causing the issuance of a certificate of stock which the charter did not authorize. The indictment could have indulged in no circumlocution or description of the fraud or falsity of his act, conceding that it is neces-

sary to particularize the facts, except what was alleged—the lack of authority in the charter, or, in other words, an over-issue. If that is not good after a verdict, then recent decisions are all wrong. [State v. Turner, 148 Mo. 206, cited with approval in State v. Jett, 318 Mo. 672, 1. c. 676; State v. Prince, 317 Mo. 1. .c. 842.]

Appellant cites State v. Wolfner, 318 Mo. 1068. In that case there was a motion to quash the amended information, and the insufficiency of the information was asserted by defendant throughout the trial. It was a proceeding under a section of the Blue Sky Law, and the false paper which the defendant was charged with exhibiting to the Assistant Commissioner of Finance, it was held, had nothing whatever to do in determining the action of that Assistant Commissioner. The falsehood charged and proven was immaterial. The facts in that case are totally different from the facts in this case. A general statement by Judge RAGLAND is quoted in the opinion as follows:

"It is *often* necessary to state the particulars of the falsity in order that the defendant may be properly informed of the issues he is required to meet." (We italicize "often.")

Appellant argues from that general statement that it is *always* necessary to charge the particulars of the falsity. In this case they were charged, and if they were not, it is unnecessary. It was not contended at any time during the progress of the case until it got here, that there was a lack of averment in that particular.

In State v. Turner, supra, the defendant was charged with uttering a false, forged and counterfeit check, setting out the check. No words descriptive of the particular facts constituting the falsity or the forgery were set out in the indictment, and it was held good after verdict, and that ruling was followed in the Jett case, supra.

V. It is further claimed that the indictment is insufficient because it does not contain the word "knowingly." The statute does not contain any such word. The indictment charges that the defendant "unlawfully, wilfully, designedly and feloniously did procure" etc. We held in State v. Hoffman, 297 S. W. 388, l. c. 389, that the use of the words "falsely, fraudulently and designedly" performing an act was equivalent to saying that it was "knowingly" performed. One could not thus perform an act without knowing that he was doing it.

VI. The appellant claims that the verdict is insufficient because it fails to find that the certificate of stock was a fraudulent certificate. The verdict is as follows:

"We, the jury in the above entitled cause, find the defendant guilty of procuring a false certificate of capital stock to be signed

with intent to issue, as charged in the indictment, and assess the punishment at, fine of $3,000 and three (3) years in the penitentiary.

"JOSEPH E. SILVERMAN,
"Foreman."

In this the appellant clings to his notion that the paper must have been *both* false and fraudulent, whereas if it was false *or* fraudulent it would come within the condemnation of the first part of Section 3350, and it would come within the condemnation of the latter part of the section if it was neither false nor fraudulent, as we have shown above. The verdict finds the defendant guilty of procuring a certificate to be signed with intent to issue "*as charged in the indictment.*" That is, it not only finds that the defendant caused to be signed the particular certificate set out in the indictment, but a certificate with all the characterizations mentioned in the indictment. Since the indictment was good, the verdict was good.

There was no defense on the merits of this case. The only questions presented here are purely and solely technical: an attempt to avoid the effect of the defendant's act, as the jury found it, in clear violation of the statute.

Under the act, Section 4079, Laws 1925, page 198, as we have often construed it (State v. Standifer, 316 Mo. 49), no alleged error was saved for our consideration in the motion for new trial, except those considered above.

The judgment is affirmed. *Blair, J.,* concurs; *Walker, J.,* absent.

PER CURIAM:—Notwithstanding the plain terms of Section 3350, Revised Statutes 1919, as analyzed in the opinion, the motion for rehearing proceeds upon a total misunderstanding of those terms. Certain acts of an officer of a corporation are condemned as criminal under the third clause of the section,—"which (acts) shall not be authorized by the charter and by-laws" of the corporation. Appellant argues that such acts of the officer cannot be criminal unless he *violates both* the charter and by-laws. The statute says nothing of the kind. It does not say "*if* the charter and by-laws forbid his act," but says "*unless* they both *approve* his act." The difference is as clear as language can make it, and as wide as the difference between one and two. It is not an affirmative restriction but a negative condition. Unless the officer's act is authorized by *both,* he is guilty, and he violates the statute if his act has the authorization of only *one.*

Of course the acts descriptive of the offense must be proven exactly as alleged. The words in this statute which describe the offense are "willfully and designedly sign or procure to be signed with in-

tent to issue" (under the third clause of the section) "any certificate or other evidence of ownership or any transfer" etc.

The words "which shall not be authorized by the charter and by-laws of such corporation," are treated by appellant as if they affirmatively described the offense, whereas they are negative limiting the application of the affirmative statement of the acts condemned. They draw the line between a criminal act and an innocent act. If it is authorized by the charter and by-laws the act is innocent. If it is *not* authorized by the charter *and* by-laws, it is criminal. That negative condition applies to *both* charter and by-laws. The officer is in violation of his trust unless he trims his acts in accordance with both.

A legislative act must be construed according to the apparent intention of the lawmakers and the purpose of its enactment. We are not at liberty to give this act a construction which would make it ridiculous or render it abortive. The purpose of Section 3350 was to prevent the signing and issuing of bogus stocks and bonds. A certificate of stock would be bogus and fraudulent if issued contrary to the charter powers of the corporation, and one would add nothing to its bogus character by proving that the by-laws did not specifically nor implicitly authorize it. If it were beyond the charter powers the by-laws could not authorize it, and such attempted authorization would not render the certificate less bogus. Therefore the Legislature in plain words said the signing, etc., of a certificate of stock is a crime *unless* authorized by the charter, *and* by-laws; that is, if contrary to either.

The motion is overruled.