PAUL L. SANDAHL, Appellee, v. CITY OF DES MOINES et al., Appellants.

No. 45126.

MARCH 12, 1940.

Chauncey A. Weaver, for appellee.

F. T. Van Liew, B. J. Flick, Sam Orebaugh & Frank W. Davis, for appellants.

MITCHELL, J.—Paul Sandahl had been in the service of the Des Moines Department of Public Parks for ten years prior to the happening which constitutes the basis of the instant case. As general park overseer and foreman, he had to superintend an aggregate territory of parks, golf links and cemeteries of approximately 1,300 acres.

In the latter part of the year 1938, a long contemplated project involving the laying of water mains in Woodland and St. Ambrose cemeteries was begun. One inducement which helped to crystalize the program was the availability of WPA help. A large gang of WPA employees were put to work on the job.

In the early part of 1939 the report began to circulate that certain graves had been disturbed. The matter was brought to the attention of the Des Moines city council, which referred it to the Civil Service Commission. The Civil Service Commission made an investigation, the nature of which is not shown in the record. For some reason not shown, the Civil Service Commission presented the matter to the grand jury. No indictments were returned. The Civil Service Commission in April of 1939

made a finding that during certain months graves in Woodland cemetery had been molested and disturbed and ordered that Paul Sandahl be charged with neglect of duty. A time and place was fixed by the commission for a hearing concerning said charges and notice thereof was duly served upon Paul Sandahl. A hearing was held in July 1939 before the Civil Service Commission, which consists of three members. The commission by a vote of two to one found Paul Sandahl guilty as charged and ordered that he be discharged from his employment with the City of Des Moines. In a very able dissenting opinion Commissioner H. M. Coggeshall, found that the charges had not been proved, and that the evidence did not justify the discharge of Sandahl.

Sandahl sought review of the trial and findings of the Civil Service Commission through a writ of certiorari filed in district court on July 21, 1939. The lower court held with Sandahl and the defendants have appealed.

The petition for the writ of certiorari alleges lack of jurisdiction on the part of the Civil Service Commission and questions the legality of the proceedings.

Code section 5711, Code 1939, provides:

"Jurisdiction—attorney—decision. The civil service commission shall have jurisdiction to hear and determine all matters involving the rights of civil service employees, and may affirm, modify, or reverse any case on its merits."

The power to "hear and determine" is an essential ingredient of jurisdiction, and the quoted words refer to a judicial investigation and settlement of an issue of fact, which implies the weighing of testimony offered by both sides, from a consideration of which the relief sought by the moving party is either granted or denied.

The second paragraph of section 19, chapter 156, Acts 47th General Assembly (Code section 5711), reads:

"The city attorney or solicitor shall be the attorney for the commission * * * [and] shall present any matters concerning civil service employees to the commission."

Here we find further intention of purpose to make these hearings absolutely judicial when called upon to "hear and determine." In such cases the city attorney or solicitor stands

in similar relation to the CSC as the county attorney does to the district court. Both assume the role of prosecutors.

The third paragraph of section 19, chapter 156, Acts 47th General Assembly (Code section 5711), reads:

"If the appeal is taken by a suspended, demoted, or discharged employee and reversed, he shall be reinstated as of the date of his suspension, demotion, or discharge, and shall be entitled to such compensation as the body having jurisdiction may determine."

The attorney appears for the commission, the accused employee appears by the attorney of his choice, or pleads his own cause, in either case there is a trial, with the outcome subject to appellate review.

This record shows, without dispute, that the charges filed against Sandahl were prepared and filed by the Civil Service Commission, the same body that under the statute was to "hear and determine" the case.

The appellants cite three cases. In Mohr v. Civil Service Com., 186 Iowa 240, 172 N. W. 278, Mohr was suspended by the chief of police, and that order of suspension was approved by the superintendent of public safety and then filed with the Civil Service Commission.

In Dickey v. Civil Service Com., 201 Iowa 1135, 205 N. W. 961, the charges were made by the superintendent of public safety and in Fetters v. Guth, 221 Iowa 359, 265 N. W. 625, the charges were made by the chief of police. In the case at bar, the charges were filed by the Civil Service Commission. It was both the prosecutor and the judge.

Sandahl as a civil service employee of the City of Des Moines was entitled to a trial. Yes, a fair and impartial trial, by a tribunal that was open minded, that was not prejudiced by outside influences. We do not doubt the honesty or the sincerity of the members of the Civil Service Commission, but they or no one else can both prosecute and fairly try one charged with an offense. Here we have a record where the Civil Service Commission made an investigation, what evidence was introduced does not appear. Then we find this Civil Service Commission going before the grand jury seeking an indictment of Paul Sandahl. Then the charges were filed by the Civil Service Commission, which then held the hearing. Would anyone say, in

face of such a record, that Paul Sandahl had a fair and impartial trial? That his rights as a civil service employee of the City of Des Moines had been properly protected?

In the case of People ex rel. Miller v. Elmendorf, 51 App. Div. 173, 64 N. Y. S. 775, the New York court said:

"It is usual and proper for a court, in reviewing proceedings such as these, to allow to the acting tribunal a very wide range for the exercise of judgment and discretion. And this practice appears to be built upon the theory that the Legislature created an impartial local tribunal in which charges of malfeasance or misfeasance or incompetency may be heard and investigated with entire safety to the parties interested, and the decision of such a tribunal is rightfully entitled to the greatest consideration. If the local tribunal, however, has not the appearance of impartiality, if it appears to have been influenced by personal hatred towards the accused, or to have assumed the attitude of accuser or prosecutor towards the ·officer on trial, or to have prejudged the case, the decision, if adverse to the officer, ought to have little or no weight in any court of justice. The relator here is charged with having forfeited a right secured to him as an honorably discharged veteran soldier through being guilty of acts which, if true, also seriously affect his reputation as a citizen. The forfeiture can be declared only after a trial, —a trial conducted in fairness, such a trial as is guaranteed to persons accused of grave offenses. It must not be a matter of form only; a means taken simply to make a record, to register a decision and judgment made by the local tribunal long before the trial was had. The accused is entitled to the unbiased judgment and decision of a tribunal upon the testimony presented. The trial of the relator was before the mayor alone. The mayor formulated the charges, and, I think, the record warrants the conclusion that the mayor was the real accuser, and himself made the charges and stood back of them. No other name appears; no other person is behind the accusations. The mayor appears to have taken an interest in procuring witnesses to support the charges, and it appears that he had previously removed the relator from his office and before this trial had begun had made the open declaration: 'But Miller will go back to police duty in this City when there is no remedy left by law to stop it.' It also appears that some two weeks before

the trial the mayor had declared to others 'that he would get rid of Officer Miller.' A careful examination of all the facts and proofs contained in the record leaves the impression too firmly fixed that the mayor had decided the case before the trial; that the trial was only a form by which his decision might be made a record and effectual for a lawful removal. We might here pass upon the testimony, perhaps, and might reach the same conclusion reached by the mayor; but the evidence is conflicting; the evidence produced in support of the charges comes for the most part from witnesses of doubtful character. I do not think we can properly weigh such testimony without seeing and hearing the witnesses. On the record evidence the relator might have been, on a judicious weighing of the testimony, found not guilty. The decision of the mayor, for the reasons stated, carries no weight. It is not the decision of an impartial or fair tribunal. The relator has not had his day in court, nor any trial worthy of the name. It may be that there is no other court in which the relator can be tried, but that fact does not create such a grave necessity as to warrant a condemnation without a trial.''

The Civil Service Commission had no authority to discharge Paul Sandahl without a hearing, and that hearing must be a fair and impartial one.

To say under this record that Paul Sandahl had a hearing, would be mere mockery. The verdict was ready to be rendered before the trial commenced. In the words of a member of the Civil Service Commission set out in this record, ''We had Paul Sandahl convicted before he ever went before us for trial''.— Affirmed.

HAMILTON, C. J., and SAGER, HALE, STIGER, and MILLER, JJ., concur.