Paul H. ROSE, Appellant, Appellant,

v.

STATE BOARD OF REGISTRATION FOR
the HEALING ARTS, Respondent.

No. 51207.

Supreme Court of Missouri,
Division No. 1.

Dec. 13, 1965.

Motion for Rehearing or to Transfer to Court
En Banc Denied Jan. 10, 1966.

Morris A. Shenker, Murry L. Randall, St. Louis, for appellant.

Norman H. Anderson, Atty. Gen., Jefferson City, Albert J. Stephan, Jr., Sp. Asst. Atty. Gen., St. Louis, for respondent.

HIGGINS, Commissioner.

■ Paul H. Rose, an osteopath in Hermann, Missouri, had his license to practice the healing arts revoked by the Respondent Board and the revocation was affirmed by the circuit court. He alleged in his petition for review and contends on this appeal that the board's procedure under Section 334.100, V.A.M.S., violated Article I, Section 10 of the Missouri Constitution and the Fourteenth Amendment to the United States Constitution in that the same agency both prosecuted and decided the case and such procedure deprived him of due process of law. We have jurisdiction because constitutionality of a legislative act has been thus challenged, Article V, Section 3, Constitution of Missouri 1945, V.A.M.S., and respondent's motion to transfer for lack of jurisdiction is overruled.

On October 29, 1963, a written notice was served on Paul H. Rose personally, which directed him to appear at a hearing before the State Board of Registration for the Healing Arts on November 23, 1963, in Jefferson City, Missouri. Appellant appeared in person and by counsel and a hearing was conducted pursuant to and on the five charges contained in the notice: (1) that from November 1, 1962 to February 18, 1963, he was addicted to habitual use of narcotic drugs; (2), (3), and (4) that on November 6, 1962, November 26, 1962, and December 31, 1962, he executed a false document in connection with the practice of his profession in that he executed a prescription for narcotic drugs purportedly for the use of a named patient without intending that said narcotic drugs would be used by or for the benefit of the said patient; and (5) that he solicited patronage by causing a certain advertisement to be published in the Hermann, Missouri, newspaper; and whether, if such charges or any of them be true, his license to practice should be revoked.

On January 25, 1964, the board entered its findings of fact, conclusions of law, and order. It found that Paul H. Rose had

committed the acts as described in charges (2), (3), (4), and (5) of the notice; concluded that the commission of such acts constituted unprofessional and dishonorable conduct within the meaning of Section 334.-100, V.A.M.S., and ordered revocation of the license of Paul H. Rose on charges (2), (3), (4), and (5), and each of them. Charge (1) was withdrawn. Appellant's petition for review came on for hearing November 2, 1964, and on December 7, 1964, the circuit court affirmed the order of revocation.

At the hearing before the board, Ernest H. Hall, agent in charge of the St. Louis branch of the Federal Bureau of Narcotics, testified that he and agent Edwin L. Stamm interviewed Paul H. Rose on March 1, 1963, at his office in Hermann. The visit was a result of a call from Clarence Berlener, a druggist in Hermann, who had some suspicions in connection with Rose's narcotic prescriptions, and was also a result of a letter received from Mr. Hailey (John A. Hailey, Executive Secretary of respondent). The interview lasted for an hour and a half or two hours during which Rose stated that he began using drugs in November 1962, and that by the latter part of November he was using approximately two tablets of Dilaudid, ⅛th grain, together with two c.c. of an injective narcotic solution about twice a day. He continued using narcotics through December, January (1963), and February, but not over two to three injections per day. In January he had curtailed his use of drugs to the point he felt he was not an addict and not in need of treatment. He mentioned the use of morphine and atropine in addition to Dilaudid which is a derivative of opium. Rose also stated that he obtained the drugs in the names of various patients; that they were obtained by prescriptions, all of which were filled at Berlener's Rexall Drugstore, and that fifty per cent of all his narcotic prescriptions were for his personal use. During the interview Rose surrendered his narcotics supply and his federal narcotics license and executed a letter which recited " * * * failure to comply with the Federal Narcotics Laws and regulations by diverting portions of my narcotic stock to my personal use * * *." The testimony of agent Stamm was substantially the same as that of agent Hall.

Clarence Berlener testified that he was the only pharmacist and operated the only drugstore in Hermann. He began filling narcotics prescriptions executed by Rose in November 1962, and "I showed him the narcotics that we had and if he needed it for a patient or if he had to go like these night calls, these cancer patients, if he wanted to take it in his bag, if he would come and write a prescription for a person, for a legitimate amount, he could get it. That is, a dose." He got to a point in January 1963 when he would not fill any more prescriptions for Rose. The witness identified three prescriptions: Exhibit 5A dated November 6, 1962, executed by Rose for (Virginia) Bossman for five 2 c.c. ampules of Demerol (a narcotic) which Rose took with him; Exhibit 5B dated November 26, 1962, executed by Rose for Betty Hoeman for one 30 c.c. ampule of morphine and atropine picked up by Rose; Exhibit 5C dated December 31, 1962, executed by Rose for Stuart LeBrell for 40 tablets of Dilaudid, ⅛th grain, picked up by Rose.

Mrs. Virginia Bossman testified that Dr. Rose had treated members of her family as early as October 1962, but that the first time he treated or prescribed for her was January 15, 1963. As to the charge (2) prescription, she was asked: "Q. Now, directing your attention to about the 6th of November, last year, 1962, I will ask you if you had any medicines prescribed for you at that time, or if you took any medicines on the recommendation of a physician? A. No, I did not."

Mrs. Betty Hoeman testified that she became acquainted with Dr. Rose in October 1962 when he came to practice in Hermann with her employer, Dr. Jeter. She admitted a dislike for Dr. Rose. Dr. Rose treated her for facial infection with a penicillin drug in December 1962, and gave

her an injection for immunity to infectious hepatitis on November 21, 1962. As to the charge (3) prescription, she was asked: "Now, directing your attention to the 26th day of November, or let's say several days thereafter, during that period of November 26 and the few days immediately following, did you receive any medication of any kind during that period, let's say from the 26th of November until the 30th of November? A. At that time I believe I was taking the oral penicillin tablets. I just can't recall exactly whether I had stopped taking them or whether I still was, but that was the only—do you mean outside of the regular thyroid tablets that I take every day? That was a pre-existing condition, Dr. Rose had nothing whatsoever to do with that. Q. All right. Did you receive any injections during that period? A. No."

Stuart LeBrell, the patient mentioned in the charge (4) prescription, was asked: "Q. Have you ever seen Dr. Rose in a professional capacity, have you ever seen him in a situation where you have been a patient? A. No. Q. Have you ever gone to Dr. Rose for any kind of medical advice or treatment? A. No, none whatsoever. * * * Q. Have you ever gotten a prescription from him, any medication? A. No, nothing professionally from him at all."

Mrs. Stuart LeBrell testified also as to the charge (4) prescription and was asked: "Q. * * * Has Dr. Rose ever brought any drugs or medication to your home for use of yourself? A. No, sir. Q. To your knowledge, has he ever brought any drugs or medication of any kind to your home for use of anyone in your family? A. No, sir."

Dr. Rose denied that he used drugs and stated that he placed unused portions of patients' prescriptions in his bag for supplies. He stated that he understood this from Dr. Jeter and Mr. Berlener to be the way both for handling prescriptions and obtaining bag supplies. He said that the Bossman prescription was for bag supplies; that the Hoeman prescription was to relieve her infectious sinus condition; and that the Stuart LeBrell prescription was intended for Mrs. LeBrell, in which case he gave her twenty tablets and put the remainder in his bag.

Appellant's first point is his contention that the proceedings under Section 334.100, V.A.M.S., deprived him of constitutional due process. He argues that because the charges were instituted, heard, and determined by the board, "(t)he Board thus acted in both prosecution and judiciary functions," and that "(n)o procedure could so clearly breach due process."

Responsibility and authority in connection with refusal, suspension, and revocation of licenses of physicians and surgeons have been delegated by the General Assembly to the State Board of Registration for the Healing Arts by Section 334.100, V.A.M.S., and that section also sets forth the grounds and procedure for such actions. It provides in pertinent part:

"1. The board * * * may, on its own information or on complaint of any persons, * * * revoke or suspend a license * * * for like causes as hereinafter provided. * * * (t)he following specifications shall be deemed unprofessional and dishonorable conduct within the meaning of this section: * * *

"(5) Addiction to a drug habit; * * *

"(8) Knowingly making, or causing to be made, * * * a false statement in any birth, death or other certificate or document executed in connection with the practice of his profession;

"(9) Soliciting patronage in person or by agents or representatives, or by any other means or manner, * * *;

"2. At least twenty days prior to the date set for any hearing before the board for the revocation or suspension of license, the secretary shall cause written notice to be served personally upon the accused * * *. The notice shall contain an exact statement of the charges * * *.

The board may receive and consider depositions and oral statements, and shall cause stenographic reports of the oral testimony to be taken and transcribed, * * *. If a majority of the board is satisfied that the licentiate is guilty of any of the offenses charged, the license shall be revoked or suspended * * *.

"3. Any person whose license is revoked or suspended * * * shall have the right to have the proceedings reviewed as provided by law for the review of decisions, rules and regulations of administrative officers and bodies existing under the constitution and laws of this state."

■ Respondent in this case has complied with the requirements of the law in that it initiated a complaint as authorized, gave written notice to the accused more than twenty days before the hearing date, which notice contained specifications of charges which the General Assembly has designated as causes for revocation, held a hearing pursuant to such notice, in which hearing evidence was taken and preserved, and made a determination as directed by the statute. The statute makes specific provision for judicial review of the proceedings and appellant secured such review in the circuit court of the county of his residence. A previous statute from which this section and procedure are derived, Section 7336, RSMo 1919, was applied to circumstances similar to this case, and the board revoked the license of a physician for a ground specified in the statute. The statute and procedure were held by the United States Supreme Court to afford due process, the court saying: "The due process clause does not guarantee * * * any particular form or method of state procedure. Its requirements are satisfied if he has reasonable notice, and reasonable opportunity to be heard and to present his claim or defense, due regard being had to the nature of the proceedings and the character of the rights which may be affected by it. * * * The procedure authorized by the Missouri statute, as it was applied by

the Board, satisfied these requirements," Missouri ex rel. Hurwitz v. North, 271 U.S. 40, 42, 46 S.Ct. 384, 385, 70 L.Ed. 818, affirming State ex rel. Hurwitz v. North, 304 Mo. 607, 264 S.W. 678; and we have held that Sections 536.100 and 536.140, V.A. M.S., under which this case was reviewed provide an adequate method of judicial review for all cases which must be contested in a hearing in the agency before a decision is made, and "(d)ue process is satisfied if there be * * * an administrative hearing subject to judicial review," State ex rel. Leggett v. Jensen, Mo., 318 S.W.2d 353, 358 [3]; and that is to say that simply because the administrative agency initiates the charge and then tries it does not, alone and of itself, vitiate the proceedings, the courts holding that due process is accorded despite such procedure, where judicial review is provided. Hohreiter v. Garrison, 81 Cal. App.2d 384, 184 P.2d 323, 328 [5]; Board of Medical Examiners v. Steward, 203 Md. 574, 102 A.2d 248, 252 [7]; Hammers v. Board of Fire & Police Commissioners, 10 Ill.App.2d 218, 134 N.E.2d 647, 651 [1]; Berry v. Alderson, 59 Cal.App. 729, 211 P. 836, 838 [3]; Tarr v. Hallihan, Ill., 30 N.E. 2d 421, 422 [1–3]; Pipe Trades, Inc. v. Rauch, 2 Ill.2d 278, 118 N.E.2d 319, 326 [7].

Appellant relies on Abrams v. Jones, 35 Idaho 532, 207 P. 724, 727 [4, 5], where the court, in a proceeding to enjoin a license revocation, regarded the "dual role of the dental examining committee as both prosecutor and judge" as "repugnant to the spirit of American law." That holding was rejected as dictum in Idaho Mut. Ben. Ass'n v. Robison 65 Idaho 793, 154 P.2d 156, 160 [10], where the specific contention was that the statute denied due process because it permitted the board having charge of unemployment compensation to function as "prosecutor, jury and judge." The court held such circumstance did not deprive a person of his constitutional right to an impartial tribunal, because "(t)he board is not in the true sense of the word an adversary." See also State v. Kouni, 58 Idaho 493, 76 P.2d

917, 922–923. Other cases cited by appellant are distinguishable because they are situations of obvious unfairness: In re Murchison, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942, involved a conviction for criminal contempt committed in a secret "judge-grand jury" proceeding in which the convicting judge was a witness to, and the party offended by, the act of contempt; Tumey v. State of Ohio, 273 U.S. 510, 47 S. Ct. 437, 71 L.Ed. 749, involved a situation where the police judge had a direct pecuniary interest in the conviction and fine assessed because he was paid only from a fund derived from such fines; Wong Yang Sung v. McGrath, 339 U.S. 33, 35, 41 [II], 70 S.Ct. 445, 450, 94 L.Ed. 616, held only that the Federal Administrative Procedure Act had as one of its purposes the curtailing of "embodying in one person or agency the duties of prosecutor and judge," and required the Immigration Service to adhere to the provisions of the Act; Amos Treat & Co. v. Securities and Exchange Comm., 113 U.S.App.D.C. 100, 306 F.2d 260, held that a member of the Commission was disqualified to judge a case in which he participated in a manner adverse to the accused's interest prior to the member's appointment to the Commission, and the Commission had denied a requested hearing on the matter of disqualification in the face of a prohibition against so acting; Atchison, Topeka and Santa Fe Railway Co. v. United States, D.C. Ill., 231 F.Supp. 422, held it would violate due process if an administrative agency was permitted without notice to the other party to reopen its hearing of a matter being reviewed in court in order to improve the agency's position before the court; Sandahl v. City of Des Moines, 227 Iowa 1310, 290 N.W. 697, held that a park overseer was denied a fair hearing where the Commission, prior to the hearing, made a formal finding of guilt which was an essential element of the case, and sought his indictment by a grand jury on the same matter to be considered in the hearing; in Hanna v. Board of Aldermen, 54 R.I. 392, 173 A. 358, three of six aldermen conducted an investigation and made findings of fact and recommendations of removal of a police chief and then sat on the hearing on the charges —such hearing was held unfair; Reardon v. Dental Commissioner, 128 Conn. 116, 20 A.2d 622, overturned suspension of a dentist's license where, contrary to the enabling statute, members of the agency investigated the charge, were the sole unsworn witnesses at the hearing, and had formed opinions of guilt prior to the hearing.

■ Contrary to the above cases, this case does not show any of the board members to be personally interested in any way in the revocation of appellant's license. Nor is any such interest or the formation of opinions claimed. None of the members participated in the case prior to the hearing except to authorize the notice to issue and the notice recites only that information concerning the doctor's conduct had been "received" by the board and that a hearing would be conducted to determine if "such charges, or any of them, are true * * *." None of the board members were challenged, and when it appeared that one member had had a physician-patient relation with one of the witnesses against appellant, an opportunity was given appellant for the interrogation of that member and the offer was declined. These circumstances belie even an appearance of unfairness leading to a denial of due process in our case.

■ In addition, the cases have held that even if the hearing board is possessed of prior knowledge of the matters in hearing, necessity dictates that the only board authorized to hold the hearing must proceed. This situation was discussed in Brinkley v. Hassig, 10 Cir., 83 F.2d 351, 357 [9–11], where Dr. Brinkley attempted to enjoin enforcement of his revocation which had been ordered on unprofessional conduct known to the members of the board prior to hearing and upon which some had expressed themselves: "Assuming such preconceived prejudice, what is the answer? The statute provides but one tribunal with power to revoke a doctor's license, just as the Su-

preme Court of Kansas is the only body with power to disbar a lawyer. If such powers may not be exercised if the members of the board or court are prejudiced, then any lawyer or doctor who commits an offense so grave that it shocks every right-thinking person, has an irrevocable license to practice his profession if he can get the news of his offense to the court or board before the trial begins. That will not do. The commendable efforts of the medical and legal professions to raise the standards of their professions by cleaning their own houses cannot be set at naught by any such rule of law.

"From the very necessity of the case has grown the rule that disqualification will not be permitted to destroy the only tribunal with power in the premises. If the law provides for a substitution of personnel on a board or court, or if another tribunal exists to which resort may be had, a disqualified member may not act. But where no such provision is made, the law cannot be nullified or the doors to justice barred because of prejudice or disqualification of a member of a court or an administrative tribunal." See also Board of Medical Examiners v. Steward, supra; Mayor of City of Everett v. Superior Court, 324 Mass. 144, 85 N.E.2d 214, 219 [13, 14]; In re Reno, 57 Nev. 314, 64 P.2d 1036, 1041 [8]; Winning v. Board of Dental Examiners, 114 Cal.App. 658, 300 P. 866, 868 [4, 5].

 Appellant argues also that our new Administrative Hearing Commission Act, Sections 162.252, et seq., Laws 1965, S.B.No. 284, effective October 13, 1965, is authority suggesting that the procedure of this case deprived him of due process of law. Such Act, however, was not in force during these proceedings; and, although it may provide desirable additions to agency hearing procedures, it does not void proceedings lawfully conducted prior to its enactment.

Appellant's claim that the procedure under Section 334.100 was a denial of due process is denied.

Appellant in Point III also claims denial of due process in failing to force agent Hall to comply with a subpoena duces tecum; however, his petition for review charges only that the "Board erred in quashing the subpoena * * *." Agent Hall was served with a subpoena duces tecum commanding him to bring all books, records, and documents relating to Dr. Rose, Dr. Jeter, and Mr. Berlener, and to include all files and investigations, order forms, and prescriptions relating to Dr. Rose. He produced less than the complete file and an omitted item was his report of his interview with Dr. Rose which he read and from which he refreshed his recollection prior to testifying. The report was requested at the hearing for the purpose of cross-examining agent Hall.

 Appellant concedes in his brief that "this Court has refused to require the production of police reports for such purposes (State v. Aubuchon, Mo., 381 S.W. 2d 807, 813, 815)," but desires to argue further that to refuse to produce them is a denial of due process under Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed. 2d 1103. Appellant presented only a charge of error to the circuit court as opposed to one of due process and we do not review beyond that claimed error. Appellant does not demonstrate how the requested document would impeach the witness' testimony and, under such circumstances, no abuse of discretion in refusing to require production of the document was shown. State v. Aubuchon, Mo., 381 S.W.2d 807, 814 [11].

Appellant's Point II charges that the notice failed to allege sufficient facts and that the evidence failed to prove sufficient facts upon which to revoke his license because the specifications and proof do not constitute unprofessional or dishonorable conduct or grounds for revocation under Section 334.100, V.A.M.S.

Charge (2) is that appellant executed a false prescription and it reads:

"(2) That on or about the 6th day of November, 1962, in the County of Gasconade,

State of Missouri, you (Paul Haron Rose, D.O.) executed a false document in connection with the practice of your profession, in that, at said time and place, you executed a prescription for narcotic drugs, to-wit: 5 ampules of Demerol, 100 milligrams per cubic centimeter, purportedly for the use of Mrs. Virginia Bossman of Hermann, Missouri, without intending that said narcotic drugs would be used by or for the benefit of said Virginia Bossman." Except for dates, drugs, and patients' names, charges (3) and (4) are in the same language.

We have previously set forth the pertinent part of Section 334.100 by which the legislature expressly made knowingly making a false statement in any document executed in connection with the practice of the profession unprofessional and dishonorable conduct for purposes of revocation or suspension of the offender's license. Appellant argues that his actions in executing the prescriptions in evidence could not be found to be dishonorable or unprofessional conduct because the element of knowledge is not charged. We recognize that knowledge is a necessary element in this proceeding and we find the element present in these charges. Each charge is to the effect that appellant executed a document, i. e., a prescription, which purported on its face to be for narcotics for the person named, and that such representation was false because appellant did not have the intention that the person named use or have the benefit of the drug. The word knowingly is in common usage and means only "with awareness, deliberateness or intention," Webster's Third New International Dictionary, and " '(i)ntent' is the purpose or design with which an act is done." State v. Harris, Mo., 313 S.W. 2d 664, 670 [5]. With such meanings applied to this case it is apparent that appellant was charged with executing prescriptions for persons at the same time intending that such persons not receive the item so prescribed. Appellant could not perform such an act without knowing that he was doing it, State v. Toombs, 324 Mo. 819, 25 S.W.2d 101, 108 [11], the matter of knowledge being supplied by his intention that the represented recipient not receive the drug, and he thereby knows the prescription to be false. The charge could hardly be expressed more exactly because it would be redundant to say appellant "knowingly did not intend" instead of "did not intend," which necessarily embodies knowledge.

Appellant would make himself innocent of wrongdoing because of the advice and local practice he attributes to Dr. Jeter and Mr. Berlener that this was the way to obtain drug supplies for his bag. A reference to the statute shows that it is not the obtaining of drugs which is proscribed by the statute but is, rather, the matter of executing false documents irrespective of motive which constitutes the unprofessional and dishonorable conduct for which the board is authorized to and has seen fit to order revocation.

Our statement of facts from the record shows unmistakably that there was substantial and competent evidence to warrant the board's findings that the prescriptions described in charges (2), (3), and (4) were knowingly falsely executed documents, and the board, in ordering revocation as authorized by the statute, obviously weighed and rejected appellant's version of his innocence, all of which requires an affirmance of the order of revocation.

We have discussed charges (2), (3), and (4) together because they are identical except for those differences previously noted. Proof of any one of them was sufficient to sustain the order revoking appellant's license and it is thus unnecessary to extend this opinion with a discussion of charge (5). Hughes v. State Board of Health, 348 Mo. 1236, 159 S.W.2d 277, 280 [12].

The judgment is affirmed.

HOUSER and WELBORN, CC., concur.

PER CURIAM.

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All concur.