Austin B. DUKE, Plaintiff-Appellant,

v.

Edwin B. MEISSNER, Jr., Theodore A. Kienstra, Lee M. Carter, Edwin J. Putzell, Jr., and Arthur B. Baer, Individually and as members comprising the Board of Police Commissioners of the Department of Police, St. Louis County, Missouri, and Raymond W. Hensley, Superintendent of Police, Defendants-Respondents.

Herman C. BIRMES, Plaintiff-Appellant,

v.

Edwin B. MEISSNER, Jr., Theodore A. Kienstra, Lee M. Carter, Edwin J. Putzell, Jr., and Arthur B. Baer, Individually and as members comprising the Board of Police Commissioners of the Department of Police, St. Louis County, Missouri, and Raymond W. Hensley, Superintendent of Police, Defendants-Respondents.

Nos. 32532, 32533.

St. Louis Court of Appeals.

Missouri.

June 13, 1967.

Motion for Rehearing or to Transfer to Supreme Court Denied July 7, 1967.

Application to Transfer Denied Sept. 11, 1967.

Richard J. Hackmeyer and Joseph A. Lott, Clayton, for plaintiff-appellant.

Joseph B. Moore, County Counselor, Thomas W. Wehrle, Deputy County Counselor, and Morton I. Golder, Associate County Counselor, Clayton, for respondents.

WOLFE, Judge.

These are appeals from a judgment of the Circuit Court which affirmed a decision of the Board of Police Commissioners of St. Louis County. The matter came before the Board of Police Commissioners on appeals from an order of the Superintendent of Police suspending and reducing in rank Herman C. Birmes, who was a Captain of Police, and Austin B. Duke, who held the rank of lieutenant. Both officers appealed and by agreement their appeals were consolidated and considered together before the Board and before the Circuit Court. Both appealed from the Circuit Court judgment to this court and both appeals are herein considered.

The Board of Police Commissioners of St. Louis County was established by Art. 5, § 49 of the St. Louis County Charter. The Board under the charter appoints a Superintendent of Police and hears appeals from decisions of the Superintendent of Police arising from disciplinary matters in the department. It also promulgates, upon recommendation of the Superintendent of Police, a manual of rules and regulations for the "qualifications, conduct and discipline of personnel of the Department of Police, and its operation." The code of discipline adopted provides, in part, in Paragraph 6.11:

> "*Discreditable Conduct,* that is to say, if he acts in a manner prejudicial to discipline or tending to bring discredit on the reputation of the Department."

And in Paragraph 6.17(d):

> "*Corrupt Practice,* places himself under obligation, pecuniarily or otherwise, to any person who operates an establishment at which intoxicating beverages are sold, to any person who holds a license concerning the granting or renewal of which the Department may have to report or give evidence, or to any person engaged in any illegal or immoral activity."

From articles appearing in the press stating that these two high ranking officers, who are the appellants here, had an interest in a St. Louis tavern known as the "Golden Horn" a member of the Board of Police Commissioners directed the Superintendent of Police to investigate the matter.

He investigated and the following facts were disclosed as stipulated to by attorneys for the appellants here.

"Come now Appellants Herman C. Birmes and Austin B. Duke, by and through their attorneys of record, and Respondent Raymond W. Hensley, by and through his attorney of record, and do hereby stipulate as follows:

"1. That V. Gladys Birmes, wife of Herman C. Birmes, Appellant, and Betty Jane Duke, wife of Austin B. Duke, Appellant, together with Alfred Von Talge and Clara Rivituso, wife of John Rivituso, were the original incorporators of Gravois-Nagel Investment Co., a corporation of the State of Missouri incorpo-

rated on the 4th day of March, 1965, and authorized to commence business on the 22nd day of March, 1965.

"2. That the records of the Secretary of State indicate that the aforementioned four persons, V. Gladys Birmes, Betty Jane Duke, Clara Rivituso, and Alfred Von Talge each owned 125 shares of the 500 original shares of stock issued in the said Gravois-Nagel Investment Co.

"3. That the first officers of the said Gravois-Nagel Investment Co. are as follows: President, Alfred Von Talge; Vice-President, Clara Rivituso; Secretary, Betty Duke; and Treasurer, V. Gladys Birmes.

"4. That the first board of Directors of the said Gravois-Nagel Investment Co. are as follows: Alfred Von Talge, Clara Rivituso, Betty Duke and V. Gladys Birmes.

"5. That the said Gravois-Nagel Investment Co. did during the month of April, 1965, purchase a parcel of real estate known as 6981–83 Gravois Avenue, in the City of St. Louis and said Gravois-Nagel Corporation did enter into business, doing business as Golden Horn Restaurant on said premises.

"6. That the State of Missouri Department of Liquor Control and the City of St. Louis did license the said Gravois-Nagel Investment Co. to sell retail liquor by the drink, and John Rivituso was the managing officer of the corporation for said licenses.

"7. That intoxicating liquor was sold on the premises of the Golden Horn Restaurant property, incidental to the restaurant operation.

"8. That Appellant Austin B. Duke and Betty Jane Duke, his wife, did borrow the sum of $5,250 from the Bank of Overland, Overland, Missouri, which sum together with other funds withdrawn from a joint savings account in the name of Austin B. Duke and Betty Jane Duke, his wife, were used for the purchase of the 125 shares of the Gravois-Nagel Investment Co.

"9. That Appellant Herman C. Birmes and V. Gladys Birmes, his wife, did borrow the sum of $5,000 from the Lemay Bank and Trust Company, St. Louis County, Missouri, which funds together with other funds withdrawn from a joint savings account in the name of Herman C. Birmes and V. Gladys Birmes, his wife, were used for the purchase of the aforementioned 125 shares in the Gravois-Nagel Investment Co.

"10. That Alfred Von Talge, incorporator, shareholder, member of the board of directors, and president of Gravois-Nagel Investment Co. is the same Alfred Von Talge who is a partner in and operator of Al's Ten Mile House, a tavern licensed and selling 5% beer in the unincorporated area of St. Louis County, Missouri, at 10004 Gravois."

In addition to the foregoing stipulated facts the following undisputed evidence was presented to the Board:

Captain Birmes and Lieutenant Duke initially discovered that the property on Gravois Avenue in St. Louis, suitable for a restaurant and cocktail lounge, was for sale. The building had previously been used for this purpose. They conceived the idea of buying the property and, perhaps, leasing it for operation as a restaurant and cocktail lounge. They then decided not to lease it but to retain control over their investment by getting somebody to operate the business. Von Talge was approached by appellants for the purpose of providing money and "know how." He offered to act as a "financial partner" in the project according to Captain Birmes' testimony, and he produced John Rivituso to act as manager of the restaurant and cocktail lounge.

Captain Birmes and his wife, Lieutenant Duke and his wife, Von Talge, and Rivituso or his wife each put up $6,250.00 to make a total equity capital of $25,000.00. The bal-

ance of the $55,000.00 purchase price of the building plus the cost of renovation and some equipment was obtained by a $40,000.00 mortgage loan.

Alfred Von Talge was in 1963 arrested for violation of State laws governing the sale of intoxicating liquor at his tavern in St. Louis County. At that time and in connection with the proceedings against Von Talge, Sergeant William Carson, a subordinate of Captain Birmes, appeared and testified before the Board of Liquor Control in Jefferson City and before the Magistrate of the Fourth District, St. Louis County. There was no conviction in the Magistrate Court but Von Talge's license to sell 5% beer was suspended for thirty days. Captain Birmes testified that he was aware of other arrests. He testified that "He (Von Talge) was arrested on other occasions. I think that Lt. Duke arrested him at one time."

Lieutenant Duke testified that he had known Von Talge personally for about eleven years and in 1956 or 1957 had arrested him and his bartender for violation of the liquor laws.

It was also shown that both Captain Birmes and Lieutenant Duke exchange information with the St. Louis Police Department regarding crime in St. Louis County and St. Louis and that the police department in St. Louis County works with the St. Louis Liquor Control office.

Both officers could be called upon to testify before the State Liquor Control Commission regarding violations of State Liquor Laws of which they had knowledge.

With regard to John Rivituso, the manager of the Golden Horn Restaurant and Cocktail Lounge, whose wife is vice president of the corporation, the evidence was that in June, 1946, he was convicted of burglary in the Circuit Court of Hillsboro, Missouri, and placed on parole. Rivituso himself testified to this and also admitted that he had been arrested in August, 1959,

suspected of liquor law violation and in August of 1960 suspected of setting up and operating a gambling house.

The shares of stock in the Gravois-Nagel Investment Company represented the joint investment of Captain Birmes and his wife and Lieutenant Duke and his wife although held in the names of the wives only. It was admitted that each officer and his wife invested $6,250.00 in this enterprise which was raised by the bank loans referred to above plus money withdrawn from joint savings accounts. Both officers testified that they had nothing to do with the operation of the establishment in question. However, meetings of the officers of the corporation were held at Captain Birmes' house in his presence and Mrs. Birmes, as treasurer, made out payroll checks for the corporation. Also, Lieutenant Duke testified that he attended business meetings "either at Mr. Von Talge's house or Mr. Birmes' house."

The suspended officers also offered in evidence a program printed in 1965 for the "Bridlespur Horse Show." This show was sponsored for the benefit of the St. Louis County Police Welfare Association. The program has numerous advertisements of business establishments in St. Louis County and some breweries and taverns are among the advertisers. Part of the advertisements were solicited by the police officers.

■ It is contended that the officers were afforded no hearing by Col. Hensley, Superintendent of Police. There is no provision for a hearing before the Superintendent. He made a thorough investigation and in conference with his assistant decided that the facts disclosed warranted the summary action taken. There is absolutely no dispute about facts disclosed and a hearing, if held, would have done nothing more than to corroborate them. The contention therefore is without merit.

■ It is also asserted that the Board of Police Commissioners did not constitute an

impartial board and that the appellants should have been allowed to interrogate members and disqualify them. The reason advanced is that the members of the Board ordered the Superintendent to investigate the matter involving the two officers after the press had carried stories about the interest they had in the tavern business. The Board is the administrative body of the Police Department. It is its duty to see that the department is efficiently run and staffed with competent officers who will conduct themselves in accordance with the rules adopted by the Board. They have the added duty of hearing appeals when an officer disciplined by the Superintendent appeals to them from a disciplinary order made. It is a dual function.

They constitute the sole body before whom an appeal may be heard. We must assume they will honestly and efficiently perform the duties imposed on them by law and accord an impartial hearing of such appeals. The record before us shows that they have done so. Wide latitude was afforded the offending officers to present evidence both as to their activities and as to extraneous matters thought by the officers to be in mitigation of their offense. We rule this point against the appellants. State ex rel. Murphy v. Burney, 269 Mo. 602, 191 S.W. 981; The State ex rel. Heimburger v. Wells, 210 Mo. 601, 109 S.W. 758.

The last contention raised is that the Board's action was "arbitrary, capricious and unreasonable." Review of the Board's action by the Circuit Court and this court upon appeal is a limited function which has been stated ad infinitum. We review the record, with proper deference to the findings involving credibility of the witnesses, to determine whether the Board could have reasonably made its findings and reached its results upon consideration of all of the evidence before it; and to set aside its decision only when, it is clearly contrary to the overwhelming weight of the evidence. Foster Bros. Mfg. Co. v. State Tax Commission of Missouri, Mo., 319 S.W.2d 590.

The punishment assessed was within the rules adopted for the enforcement of discipline. The ruling of the Board was fully supported by the evidence and the point raised is wholly without merit.

For the reasons stated the judgment of the Circuit Court affirming the award of the Board of Police Commissioners is affirmed.

ANDERSON, P. J., and THEODORE McMILLIAN, Special Judge, concur.

RUDDY, J., not participating.