HARRISBURG R–VIII SCHOOL DISTRICT, Plaintiff-Respondent,

v.

Cora Lou O'BRIAN, Defendant-Appellant.

No. KCD 28132.

Missouri Court of Appeals,
Kansas City District.

Aug. 2, 1976.

Motion for Rehearing and/or Transfer Denied Aug. 30, 1976.

Application to Transfer Denied Oct. 12, 1976.

Thomas D. Cochran, Joe F. Willerth, Piedimonte & Cochran, Independence, for appellant.

John W. Inglish, Inglish & Calhoun, Jefferson City, for respondent.

Before SHANGLER, P. J., and SWOFFORD and SOMERVILLE, JJ.

SOMERVILLE, Judge.

This is an appeal from a judgment of the Circuit Court of Boone County, Missouri, affirming a decision of the Board of Education of Harrisburg R–VIII School District (respondent, hereinafter "District") terminating an "indefinite contract" with Cora Lou O'Brian (appellant, hereinafter "O'Brian") a "permanent teacher". See generally Sections 168.102 to 168.130, RSMo 1969—Teacher Tenure Act. In many respects it is a case of first impression.

O'Brian seeks reversal of the judgment, reinstatement as a "permanent teacher", and an "award" for "lost compensation". The points specified by her on appeal to support this multi-faceted relief are seven in number. Although challenging and innovative in part, they are somewhat complex in view of the context in which they arise, and, in many instances, convolutely argued, and supported, at best, with only sparing and nebulous authority. After setting forth and making reference to certain basic facts and statutory and regulatory provisions, the seven points raised by O'Brian will be seriately discussed.

The District's compliance with the procedural requirements of Sections 168.116 and 168.118, RSMo 1969, has not been questioned by O'Brian. The written charge brought against O'Brian, considerably abbreviated, specified that she unreasonably absented herself from the teaching duties assigned to her by the District's board of education for the 1974–1975 school year, teaching special education at the high school level, in violation of paragraph VII D of the published regulations of the District which were incorporated by reference in her contract of employment. Sub-paragraph (5) of paragraph 1 of Section 168.114, RSMo 1969, sets forth one of several statutory grounds, which, if violated, constitutes cause for termination of a permanent teacher's indefinite contract:

"(5) Excessive or unreasonable absence from performance of duties; . . . ."

Paragraph VII D of the published regulations of the District reads: "The Board of Education has the authority to assign any duties, to a teacher, in any field for which they may be certificated."

In December of 1973, the District, cognizant that it had to offer special education at the high school level in order to obtain a "double A classification", initiated steps to have O'Brian temporarily certificated to teach special education at the high school level. At that time O'Brian, a teacher for some thirty years, was certificated to teach special education at all grade levels from kindergarten through the ninth grade. Absent O'Brian's consent or knowledge, the District's superintendent contacted the State Board of Education and was instrumental in obtaining temporary certification for O'Brian to teach special education at the high school level as well as at the elementary level. O'Brian first learned that she had been temporarily certificated to teach special education at the high school level on April 17, 1974. The temporary certificate, enlarging the scope of curricula subjects which O'Brian was licensed to teach, was issued by the State Board of Education pursuant to Section 168.021, RSMo 1969, which, in part, reads:

"1. Certificates of license to teach in the public schools of the state shall be granted as follows:

(1) By the state board of education, under rules and regulations prescribed by it,

"(a) Upon the basis of college credit; . . ."

Prior to April 17, 1974, the *matter of her* teaching special education at the high school level was broached in conversations between O'Brian and the District's superintendent, at which time she protested on the ground that she did not consider herself qualified because all of her college training was geared to teaching at the elementary level and it was unfair to expect her to do so since there was a younger teacher in the system who was as qualified as she was to teach the contemplated course of instruction during the coming school year. During the earlier part of April, 1974 (the record fails to disclose the exact date), O'Brian learned that her teaching assignment for the coming school year of 1974–1975 would be teaching special education at the high school level. Subsequent to the events and incidents just related, and prior to August 26, 1974 the start of the 1974–1975 school year, O'Brian repeatedly remonstrated with the District about her teaching assignment for the coming school year. The District concluded that O'Brian, notwithstanding her remonstrations, was qualified to teach special education at the high school level. Moreover, many students who would be in her special education class at the high school level were former students in special education classes taught by her at the elementary level. The transcript of the record of the hearing held by the board of education of the District pursuant to Section 168.118, RSMo 1969, reveals that the parties stipulated (subject only to an objection reserved by the District which need not be ruled on) that when the superintendent of a school district, as here, requests broadened temporary certification for a teacher, the State Board of Education assumes that the affected teacher has given the superintendent permission to request the temporary certification; the stipulation further reveals that if temporary certification is granted solely upon the request of a superintendent of a school district, the State Board of Education, upon being advised that temporary certification has been granted without permission of the affected teacher, will, upon request of the affected teacher, withdraw the temporary certification. O'Brian, prior to the hearing conducted on October 15, 1974, passively sat by and made no effort to have the temporary certificate issued by the State Board of Education withdrawn. When school started on August 26, 1974, O'Brian failed to report to her designated classroom and adamantly refused to assume her assigned duty of teaching special education at the high school level. Her refusal, following a hearing held by the board of education of the District pursuant to Section 168.118, supra, culminated in termination of her "indefinite contract" as a "permanent teacher".

*Points I and II:* O'Brian charges (I) that issuance of the temporary certificate by the State Board of Education without any request from her to do so, and absent her consent or knowledge, deprived her of due process of law as guaranteed by both the state and federal constitutions. For reasons just stated, she contends (II) that she was not "validly" certificated to teach special education at the high school level and, accordingly, was not guilty of an "unreasonable absence from performance of duty" [sub-paragraph (5) of paragraph 1 of Section 168.114, supra] predicated upon a violation of paragraph VII D of the published regulations of the District, supra. Points I and II, by their very nature, lend themselves to being jointly discussed and disposed of.

O'Brian makes a split argument to support these points. First, she appears to contend that issuance of the temporary certificate by the State Board of Education, without her consent or knowledge, violated her inherent academic freedom to choose the subjects which she desired to teach and for which she personally deemed herself qualified, thereby constituting a deprivation of her "liberty . . . without due process of law." The dispositional basis, infra, of O'Brian's first point makes it unnecessary to decide whether her academic freedom of choice in the context claimed is or is not a constitutionally protected right and

the court's opinion in the instant case should in no way be construed as doing so. Second, she appears to contend that it is implicit in Section 168.021, supra, and Section 168.031, RSMo 1969, that the temporary certificate issued by the State Board of Education was "invalid" because of her lack of consent and knowledge. The "split" argument will be dealt with in reverse order.

Neither party has cited any rule or regulation promulgated by the State Board of Education touching upon or which prohibits temporary certification solely upon the request of a school district. This court assumes that if a prohibitory rule or regulation existed, or one touching upon the process of temporary certification existed which was violated, O'Brian would have cited same and made it or them available to this court on appeal.

▊ This court finds nothing in the language of the statutes relied upon by O'Brian which explicitly or implicitly renders "invalid" temporary certification of a teacher by the State Board of Education when done solely on the request of a school district. On the other hand, the stipulation of the parties heretofore referred to reveals that the State Board of Education, as a matter of policy, followed a practice of temporarily certificating teachers solely upon the request of a school district when the teacher involved, as here, was found to be academically qualified. This policy was tempered by the concomitant policy of the State Board of Education to withdraw such temporary certification upon request of an affected teacher when notified that the same had been done without the teacher's consent. In the instant case O'Brian, prior to the hearing on October 13, 1974, made no effort to contact the State Board of Education and protest the validity of her temporary certification on the ground that it was done without her consent, nor did she seek to have her temporary certification withdrawn. Instead, her protests were lodged exclusively with the District on the asserted ground that she did not feel she was qualified to teach special education at the high

school level. Although the policy followed by the State Board of Education, as evidence by the stipulation, provided a simple and speedy remedy to protect her pedagogic freedom, she made no effort to inquire into or avail herself of the remedy. To the contrary, she chose to lodge repeated protests with the District that she did not personally feel that she was qualified to teach special education at the high school level, and when school started on August 26, 1974, she adamantly refused to assume her assigned duties and stayed away from her classroom. In short, she took matters into her own hands and defied the District's administrative decision.

▊ The essence of "due process of law", in the sense contended by O'Brian, is that an aggrieved person must be afforded a procedural remedy to seek redress for deprivation of a claimed right. As held in *State ex rel. Leggett v. Jensen,* 318 S.W.2d 353, 358 (Mo.banc 1958) "[d]ue process is satisfied if there be either an administrative hearing subject to judicial review or the right to have a hearing in a court which may adequately review the administrative decision." See also: *Bourjois, Inc. v. Chapman,* 301 U.S. 183, 189, 57 S.Ct. 691, 81 L.Ed. 1027 (1937) and *Boone v. Wyman,* 295 F.Supp. 1143, 1150 (S.D.N.Y.1969). It is not clear from the stipulation heretofore referred to, nor otherwise from the record, just when O'Brian learned of the simple, speedy remedy which the prevailing policy of the State Board of Education afforded. Assuming, arguendo, that she was completely unaware of it prior to the start of school, Section 536.150, RSMo 1969, and Rule 100.08 provided a procedural vehicle whereby she could have obtained judicial review of the State Board of Education's decision granting the controversial temporary certification. The right of review statutorily and by Supreme Court rule given to her (Section 536.150, supra, and Rule 100.08, supra), which she made no effort to avail herself of after she learned of her temporary certification, vitiates her contention that she was stripped of a fundamental liberty without due process of law.

In view of at least one presumptively known and available remedy (Section 536.-150, supra, and Rule 100.08, supra), O'Brian's belated attack on the "validity" of her temporary certification appears to be collateral in nature. As stated in 78 C.J.S. Schools and School Districts § 168, p. 993, "[a] teacher's certificate is prima facie evidence of the teacher's qualifications and of the fact that the members of the board or committee issuing such certificate have properly performed their duty as to the manner and requisites of their issuing it. [and] [i]n the absence of fraud it cannot be collaterally impeached, . . .." O'Brian does not expound any claim that the State Board of Education perpetrated a fraud when it temporarily certificated her to teach special education at the high school level, and if she did, it would find no support in the record.

*Point III:* O'Brian charges (1) that the hearing was "unfair" because the District's regular counsel represented it at the hearing and (2) was both "unfair" and violative of due process of law because the District's board of education occupied the triple role of investigator, prosecutor and judge.

■ Active participation on behalf of a board of education by its regular counsel at a hearing resulting in the discharge of a permanent teacher, vis-a-vis a charge that such gives rise to an "unfair" hearing, has not been previously addressed in this state. The record does not imply or suggest that the board of education's regular counsel participated in the deliberative process that resulted in O'Brian's discharge. The board of education of the District alone shouldered the burden and duty of determining whether O'Brian should be discharged because of the charge leveled against her, as it alone was empowered by law to do (Section 168.118, supra). The Appellate Court of Illinois, Second District, confronted with having to decide a similar charge, held that active participation by a board of education's regular counsel at a hearing resulting in discharge of a permanent teacher did not

render the hearing unfair. *Yuen v. Board of Education of School Dist. No. U–46,* 77 Ill.App.2d 353, 222 N.E.2d 570, 573 (1966). This court is constrained to reach the same conclusion in the instant case.

■ The charge that a de facto combination of investigatory, prosecutory, and adjudicatory functions in an administrative tribunal statutorily vested to initially pass judgment or make a decision after a hearing, stamps any hearing so held with unfairness, and renders it constitutionally infirm because violative of due process, is far from novel. The crux of O'Brian's argument to support her third ground is subject to being isolated in a brief statement—the board of education of the District had knowledge of the facts before the hearing was held. This argument ignores reality. The preferment of charges against O'Brian presupposes that the board of education of the District had some prior knowledge of the facts. After a careful perusal of the record, this court finds nothing which indicates that the board of education's prior knowledge of facts resulted in an irrevocable commitment on its part to terminate O'Brian's "indefinite contract" regardless of what the evidence at the hearing, pro or con, might reveal, or that it conducted the hearing and passed judgment with an unbendable or preconceived notion that she was guilty as charged. *Rose v. State Board of Registration for Healing Arts,* 397 S.W.2d 570, 574–575 (Mo.1965), answers this aspect of O'Brian's third ground adversely to her. See also the following cases, likewise adverse to O'Brian, specifically passing on similar charges in cases involving the discharge of teachers: *Spruce Hill Tp. School Dist. v. Bryner,* 148 Pa.Super. 549, 25 A.2d 745 (1942); *Griggs v. Board of Trustees of Merced Union H.S. Dist.,* 61 Cal.2d 93, 37 Cal.Rptr. 194, 389 P.2d 722 (banc 1964); and *Petitions of Davenport,* 129 Vt. 546, 283 A.2d 452 (1971). *Hortonville Dist. v. Hortonville Ed. Assn.,* —— U.S. ——, 96 S.Ct. 2308, 49 L.Ed.2d 1, handed down by the Supreme Court of the United States on June 17, 1976, is even more persuasive au-

thority for ruling this aspect of O'Brian's third point against her.

■ *Point IV:* O'Brian charges that the board of education's decision terminating her "indefinite contract" was "arbitrary", "capricious", "not supported by the weight of the evidence", and "constituted an abuse . . . of discretion." She relates the same to the scope of judicial review delineated in Section 536.140, RSMo 1969. A common theme runs through all the arguments advanced by O'Brian in support of Point IV. Its genesis is certain evidence which she has chosen to isolate and which she unilaterally claims is controlling to the exclusion of all other evidence. This evidence, briefly alluded to, is as follows: The record discloses that previous attempts, albeit unsuccessful, were made to discharge her, she had previously been given various mundane duty assignments, her professional rapport with the District's superintendent was less than desirable, and her rate of pay, notwithstanding her years of service, was only slightly higher than that of starting teachers in the District. Based thereon, O'Brian contends that the charge which precipitated termination of her contract was a mere facade to get rid of her because she was considered a problem teacher by the District. This contention, regardless of how well-intentioned on O'Brian's part, rests, at best, on a suspicional reaction on her part to the matters just mentioned. The record bears out that the District was anxious to obtain a "double A classification" for its school system. It concluded that O'Brian was qualified to teach special education at the high school level if she could be temporarily certificated by the State Board of Education to do so. Even though the judgment it exercised in getting O'Brian temporarily certificated may, as a matter of hindsight, appear to have been ill-advised, the trappings which O'Brian seeks to attach to it are not sustained by the record. To rule otherwise would be tantamount to holding that a vendetta against O'Brian motivated the District's decision rather than a concern for the best interest of its pupils and patrons. Moreover, to so hold would completely ignore and effectively obliterate the undisputed fact that O'Brian chose to take matters into her own hands by refusing to go to her assigned classroom and teach special education at the high school level, thereby attempting to usurp the District's right to decide and implement policies affecting its school system. This undisputed fact not only constitutes substantial evidence to prove the charge brought against O'Brian, but it also frees the District's decision from being branded as "arbitrary", "capricious", "unsupported by the weight of the evidence", or an "abuse of discretion".

■ *Point V:* O'Brian charges that she was "invidiously discriminated" against, and thereby denied "equal protection of law", because she was singled out for temporary certification to teach special education at the high school level. She appears to hinge this charge on the argument that a younger teacher in the system with only one year's experience could also have been temporarily certificated. True enough, the prohibition of "invidious discrimination" is a primary function of the "equal protection" clause of the 14th Amendment to the Constitution of the United States, as held in *Burns v. Swenson,* 430 F.2d 771, 778 (8th Cir. 1970) and *State v. Champ,* 477 S.W.2d 81 (Mo.1972), both cited by O'Brian. However, the board of education's selection of O'Brian, a teacher with some thirty years' experience to teach special education at the high school level, as opposed to selection of a younger teacher with one year's experience, does not ring with "invidious discrimination". O'Brian's contention otherwise, suspicional at best, is ruled against her.

■ *Point VI:* O'Brian charges that the board of education of the District erred in not considering regular "evaluation reports" concerning her professional competency and efficiency which were prepared in accordance with written standards of the District. She claims that paragraph 2 of Section 168.114, RSMo 1969, compelled their

**952**

consideration. She is wrong. Sub-paragraphs (1), (2), (3), (4), (5), and (6) of paragraph 1 of Section 168.114, supra, list the "causes" for which the "indefinite contract" of a "permanent teacher" may be terminated by a board of education of a school district. Sub-paragraph (3), supra, reads: "Incompetency, inefficiency or insubordination in line of duty". Paragraph 2 of Section 168.114, supra, relied upon by O'Brian, reads: "In determining the professional competency of or efficiency of a permanent teacher, consideration should be given to regular and special evaluation reports prepared in accordance with the policy of the employing school district and to any written standards of performance which may have been adopted by the school board." O'Brian was not charged with "professional" incompetency or inefficiency. She was charged with "unreasonable absence from performance of duties", sub-paragraph (5) of paragraph 1 of Section 168.114, supra. Her professional "competency" or "efficiency" were not in issue and bore no relationship whatsoever to the charge leveled against her. It is self-evident from the clear wording of paragraph 2 of Section 168.114, supra, that the board of education of the District was not required to consider O'Brian's professional "competency" or "efficiency" when deciding whether or not she was guilty of "unreasonable absence from performance of duties."

■ *Point VII:* O'Brian charges that the board's decision terminating her "indefinite contract" because of "unreasonable absence from performance of duties", resting as it did upon paragraph VII D of the regulations of the District, supra, deprived her of "due process of law" because the "regulation failed to adequately define 'certificated'". According to the argument tendered in support of this charge, O'Brian feigns a lack of understanding or knowledge as to what was meant by the term "certificated". It is incomprehensible to this court that a teacher with some thirty years of experience did not know what was meant by the term "certificated" in the context in which

it was used. O'Brian's final point is ruled against her.

Judgment affirmed.

All concur.