Helen **AUBUCHON, Plaintiff-Appellant,**

v.

**GASCONADE COUNTY R–1 SCHOOL DISTRICT, Defendant-Respondent.**

**No. 37409.**

Missouri Court of Appeals,
St. Louis District,
Division Three.

Aug. 31, 1976.

McQuie & Deiter, Walter D. McQuie, Jr., Montgomery City, for plaintiff-appellant.

Randolph C. Puchta, Hermann, for defendant-respondent.

GUNN, Judge.

Plaintiff, a permanent elementary school teacher with the Gasconade County R–1 School District, appeals from a judgment of the circuit court upholding a decision by the Gasconade County R–1 School District Board of Education to terminate her contract because of an excessive and unreasonable absence from her teaching duties. On appeal plaintiff argues that § 168.114–1(5) RSMo. 1969, under which she was dismissed, is unenforcible in the absence of properly adopted regulations defining excessive and unreasonable absence; that there was insufficient evidence to support the Board's finding; and that she was not accorded a fair and impartial hearing. We affirm.

The occurrence which precipitated the Board's action was an unexcused five day absence between March 3–7, 1975. On Sunday, March 2, 1975 at approximately 8:30 a. m., plaintiff telephoned the home of her supervisor, Mr. Kessler, the Director of Elementary Education in the School District, leaving a message with his wife that: "I think I am coming down with the flu, I do not know when I will be back at school." Mrs. Kessler relayed this message to her husband later that same afternoon. No substitute teacher was employed for Monday, March 3, or the following Thursday and Friday. On Tuesday and Wednesday, however, a substitute was retained. Mr. Kessler attempted to contact plaintiff at her home by telephone on two occasions, but in each instance the individual he spoke with said that plaintiff was not home and would not return before Friday, March 7. At no time during the week in question did plaintiff contact her supervisors to explain the cause of her absence or to inform them when she would return to work. Plaintiff ultimately returned to work on Tuesday, March 11. (School was cancelled because of weather conditions on March 10.)

Subsequent to her return to class the administration of the school district learned that plaintiff had been in Las Vegas with her husband who was attending a convention. The fact is that plaintiff telephoned Mr. Kessler's home at 8:30 a. m. on Sunday morning to report that she thought she was becoming ill; a half hour later at 9:00 a. m., she was making her way to Las Vegas with her husband for a week's stay. When confronted by Mr. Kessler and Mr. Boeger, the Superintendent of Schools, plaintiff admitted being on the trip but claimed that she had been ill prior to and during the time she was in Las Vegas. Plaintiff did admit, however, that she participated in certain activities with her husband in Las Vegas.

The school policy regarding teacher absences was adopted by the Board of Education at an August 8, 1974 meeting. Copies of the policy were prepared and distributed to all teachers at the pre-school workshop which plaintiff attended. In addition, Mr. Boeger explained the policy orally to the assembled teachers. Plaintiff, however, asserted that she had neither read nor received a copy of this policy. Under its

terms teachers were allowed eight days sick leave and two days personal leave per year. Sick leave could be accumulated to sixty days. Throughout her eleven years with the district plaintiff had 38 days accumulated sick leave prior to March 3, 1975. Sick leave, however, was to be taken only in the event of actual illness and was not allowed as additional vacation time. Nevertheless, in practice the school had never required medical documentation of illness by absent teachers.

After her absence was brought to their attention by Mr. Boeger and Mr. Kessler, the Board of Education on April 7, 1975 sent plaintiff a letter notifying her that she was charged with "[e]xcessive or unreasonable absence from performance of duties between and including the dates of March 3, 1975 to March 7, 1975, during which period illness was alleged by you to be the reason for your absence from performance of duties, when in fact you had taken a personal pleasure trip." It further stated that "the intent of these charges is to terminate your contract." A hearing was held on April 28, 1975 before the Board of Education of the Gasconade County R–1 School District for the purpose of inquiring into the charges. The School Board at its May 8, 1975 meeting, after making a finding of facts that plaintiff was not ill during the relevant period but was on a pleasure trip, voted to terminate her contract as of May 9, 1975.

Plaintiff appealed the Board's decision to the circuit court pursuant to § 168.120 RSMo. 1969. The circuit court upheld the Board's action, and plaintiff has appealed.

■ Plaintiff's first assertion of error is that § 168.114–1(5) RSMo. 1969 under which her contract was terminated is, in the absence of properly adopted and published school regulations, void and unenforceable because it is too vague and indefinite. The relevant section of this statute provides that an indefinite contract with a permanent teacher may not be terminated except for "(5) [e]xcessive or unreasonable absence from performance of duties." Plaintiff contends that in order for this provision to serve as a basis for termination, the terms "excessive" and "unreasonable" must be explicitly defined in regulations adopted by the School Board under procedures established in § 171.011 RSMo. 1969. We reject plaintiff's contention. We agree with the circuit court that § 168.114–1(5) is self-executing. The terms, "excessive" and "unreasonable," though admittedly imprecise, are not so vague and indefinite as to render this statute unenforceable. On the contrary, they are frequently used as the guiding standards of action in statutory as well as case law.[1] In ascertaining their intended meaning in the context of § 168.114–1(5) we must interpret these words in their plain and ordinary usage. *Brask v. Bank of St. Louis,* 533 S.W.2d 223 (Mo.App.1975).

■ While it is true that § 168.122 RSMo. 1969 authorizes school boards to establish a teacher absence policy it does not mandate such action as plaintiff contends, and thus a formal policy is not an essential prerequisite to termination proceedings under § 168.-114–1(5). Furthermore, § 168.114–1(4) allows termination for "[w]illful or persistent violation of, or failure to obey the school laws of the state or the published regulations of the board of education of the school district employing him." If we were to hold that explanatory regulations were required for utilization of subparagraph (5) it

1. See, for example §§ 287.140, 304.011, 304.-017, 304.019 RSMo. 1969 and §§ 452.305, 452.-340 and 452.355 RSMo. Supp. 1975 for a few statutes making reference of the word "reasonable." See also *Anderson v. St. Louis-San Francisco Railway Co.,* 367 S.W.2d 657, 660 (Mo.App.1963), which notes the frequent use and elastic meaning of "reasonable," e. g., that "[a] reasonable number of fleas is good fer a dog," if one fails to take the dog's well-being into consideration. And, of course, it is primordial criminal law that a defendant's guilt must be proved beyond a "reasonable" doubt. *State v. Woolard,* 111 Mo. 248, 20 S.W. 27 (1892). There is also reliance on the "reasonable" juror, *S. P. Personnel Assoc., etc. v. Hospital B. & E. Co.,* 525 S.W.2d 345 (Mo.App.1975), and "reasonable" inference to be drawn from the evidence. *Joiner v. Kurt's Chip-A-Way Park, Inc.,* 510 S.W.2d 773 (Mo.App.1974). Thus, the use of "reasonable" or "unreasonable" in a statute appears to be reasonable.

would make subparagraphs (4) and (5) synonymous and would render subparagraph (5) totally superfluous. Any violation of the subparagraph (5) regulations would also be a violation of subparagraph (4). Thus, in order to read the statute so that all sections have meaning we must conclude that subparagraph (5) is self-executing.

■ Having reached this conclusion we must determine if there was substantial evidence in the record to support the findings of the Board of Education that plaintiff's absences were excessive or unreasonable. Plaintiff contends that the evidence was insufficient, as the amount of time she was absent from her duties was well within the accumulated sick leave period and because the School Board did not offer any evidence to disprove her claim that she was in fact ill at the time of her trip.

■ The scope of judicial review of administrative decisions is limited to a determination of whether the decision is supported by competent and substantial evidence. *Chapman v. Sanders,* 528 S.W.2d 462 (Mo.App.1975). The court may not substitute its judgment for that of the administrative tribunal, but should limit its inquiry to whether the conclusions reached by the tribunal were reasonable under the evidence presented. *Merideth v. Board of Educ. of Rockwood R–6 Sch. Dist.,* 513 S.W.2d 740 (Mo.App.1974). In our determination of the reasonableness of the Board's action, the evidence must be considered in the light most favorable to the findings of the Board together with all reasonable inferences which may be drawn. *Merideth v. Board of Educ. of Rockwood R–6 Sch. Dist.,* supra. Furthermore, there is a strong presumption in favor of the validity of an administrative determination which may only be overcome by clear and convincing evidence. *Saunders v. Reorganized Sch. Dist. No. 2 of Osage County,* 520 S.W.2d 29 (Mo.1975). Courts are especially reticent to interfere in cases involving the exercise of a school district's discretion. *Smith v. Consolidated Sch. Dist. No. 2,* 408 S.W.2d 50 (Mo. banc 1966). "School authorities are vested with wide discretion in all matters affecting school management, and a court may not ordinarily interfere unless that power is exercised in an arbitrary, unreasonable or unlawful manner." *Saunders v. Reorganized Sch. Dist. No. 2 of Osage County,* supra at 35.

The fact that the length of plaintiff's absence was less than her accumulated sick leave is not really relevant to the outcome of this case. Accumulated sick leave is a device to protect the job security of employees who because of ill health must be absent from work for extended periods of time; it is not intended as additional vacation time to be taken at the employee's caprice. Thus, the Board's sole focus of inquiry was whether the specific absence from March 3–7 was unreasonable or excessive. Plaintiff by her own testimony, admitted that she was not too ill to travel to St. Louis, to fly to Las Vegas or to attend convention meetings with her husband. From this testimony the Board could quite rationally draw an inference that plaintiff was not too ill to teach as she maintained. In fact, plaintiff was asked whether "she was too ill to have been at school had she been home, and the answer was, 'Probably not.'"

Nor can we say that the Board abused its discretion in finding this absence to be unreasonable or excessive. In the course of her employment, plaintiff was responsible for instructing a number of young children in a specialized area of study (art), and in the administration's opinion her absence was detrimental to the educational welfare of these children. Probably the most influential factor in the Board's decision was plaintiff's attempt to deceive them as to the reason for her absence. School districts have a right to demand more forthright conduct from their professional employees. Under these circumstances, although the Board had available a less severe course of action rather than terminating plaintiff's contract, we cannot say that their decision was an abuse of discretion.

■ Plaintiff's final allegation of error is that she was deprived of a fair hearing before an impartial tribunal because the School Board both issued the charge and

decided its merits. This allegation is unfounded. The mere fact an administrative body initiates a charge and then tries it does not alone vitiate the proceedings if judicial review is provided. *Rose v. State Board of Registration for Healing Arts,* 397 S.W.2d 570 (Mo.1965). Judicial review of a termination decision is expressly provided by § 168.120 RSMo. 1969. Moreover, the evidence in this case indicates that it was Mr. Boeger, the school superintendent, who recommended initiation of the charge. The issuance of the charge by the Board was a mere formality.

The only remaining question is whether the hearing itself was fair and impartial and conducted by an impartial tribunal free of bias, hostility and prejudice, exercising its authority consistently with fundamental principles of justice. There is no indication on the record that the Board of Education was biased or prejudiced against plaintiff. She was given a full opportunity to present her case. The fact that the Board, which is the sole judge of credibility, found against plaintiff does not give us reason to suspect their fairness. The Board's determination was a reasonable one under the circumstances. See *Stewart v. Bd. of Ed. of Ritenour Consolidated School District R–3,* 538 S.W.2d 765 (Mo.App.1976), holding that an agency decision must be supported by findings of fact and conclusions of law under § 536.090 RSMo. 1969 and that a termination of teacher's employment for excessive or unreasonable absence was unsupported by any school board policy. The *Stewart* case is readily distinguishable from the situation here where a policy on absences did exist and the Board's decision was supported by findings of fact and conclusions of law. So, too, is this case distinguishable from *Pollard v. Bd. of Ed. Reorg. Sch. Dist., etc.,* 533 S.W.2d 667 (Mo.App.1976), where the school board failed to specify with particularity the grounds for terminating a teacher's employment. The basis for terminating plaintiff's contract is sufficiently specified here.

There being no error the judgment of the circuit court is affirmed.

SIMEONE, P. J., and KELLY, J., concur.