Nadine EDDINGTON, Appellant,

v.

ST. FRANCOIS COUNTY R–III BOARD OF EDUCATION, Respondent.

No. 38716.

Missouri Court of Appeals,
St. Louis District,
Division 3.

Feb. 21, 1978.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 10, 1978.

Application to Transfer Denied
May 9, 1978.

Louis Gilden, St. Louis, for appellant.

Medley, Alexander & McIntosh, Charles W. Medley, James E. Alexander, Farmington, for respondent.

GUNN, Presiding Judge.

Respondent, St. Francois County R–III Board of Education (School Board), terminated appellant's indefinite contract of employment as a tenured teacher. The circuit court affirmed the School Board's action and denied her petition for review. Appellant has appealed the circuit court's judgment, raising five points of alleged error: (1) that there was no substantial or competent evidence to support the School Board's decision terminating her employment because there was not sufficient proof that appellant's job performance was deficient; (2) that she had not been given proper notice of the charges against her; (3) that inasmuch as she had filed sex discrimination charges against the School Board and against its members individually in federal district court, appellant was denied due process and a fair hearing, because the School Board had a personal interest in discharging her from employment; (4) that the appellant should have been given the opportunity to present evidence to the circuit court that the School Board was improperly influenced by its attorney; and, (5) that the hearing on the charges against appellant was conducted more than 30 days after the notice of hearing, contrary to § 168.116.3 RSMo 1969.[1] We affirm.

Among the charges that served as a basis for the School Board's ruling that appellant's employment as a teacher should be terminated was that her teaching performance was incompetent; that she failed to maintain proper classroom order and disciplinary procedures; and that she failed to properly teach music fundamentals to her students—all in violation of School Board regulations. Without detailing all the evidence, we find that the School Board's ruling was supported by competent and substantial evidence, not contrary to the overwhelming weight of evidence, and that ap-

---

1. Statutory references are to RSMo 1969.

pellant was given proper notice under § 168.116.2 of the charges against her. Consequently, we are compelled to affirm the School Board's ruling. *Bd. of Ed., Mt. Vernon Schools v. Shank,* 542 S.W.2d 779 (Mo. banc 1976); *Moore v. Bd. of Ed. of Sp. Sch. Dist.,* 547 S.W.2d 188 (Mo.App.1977); *Aubuchon v. Gasconade Cty. R–1 Sch. Dist.,* 541 S.W.2d 322 (Mo.App.1977). While there was conflict in the evidence, such conflicts are to be resolved by the hearing tribunal. *Moore v. Bd. of Ed. of Sp. Sch. Dist.,* supra. We thus rule against appellant on her first two points.

▆▆▆ Appellant had filed sex discrimination charges in federal district court seeking money damages from the School Board and the superintendent of schools. At the time of the hearing against appellant, the sex discrimination charges were pending. Appellant contends that by reason of the case in federal court she could not receive fair and unbiased treatment from the School Board. She urges that the standards for due process forbade the School Board from participation in adjudication of the charges brought against her. We find insufficient basis to change the trial court's ruling in this regard. Sections 168.114–168.118 provide the procedures for hearing on termination of a tenured teacher's indefinite contract of employment. Those procedures were followed here. As stated in *Duke v. Meissner,* 417 S.W.2d 505, 509 (Mo.App.1967), regarding the validity of a hearing before an administrative body having the jurisdiction, as here, to conduct disciplinary procedures:

"They constitute the sole body before whom an appeal may be heard. We must assume they will honestly and efficiently perform the duties imposed on them by law and accord an impartial hearing on such appeals."

Using *Duke v. Meissner,* supra, as a guide, we find that the record fails to disclose that appellant was deprived of a fair and impartial hearing by the School Board. We find that appellant was given a fair hearing in accordance with the statutory procedures. The fact that the School Board, which initiated the charges against appellant, conducted the hearing does not vitiate the proceedings. *Rose v. State Board of Registration for the Healing Arts,* 397 S.W.2d 570 (Mo.1965); *Aubuchon v. Gasconade Cty. R–1 Sch. Dist.,* supra; *Harrisburg R–VIII Sch. Dist. v. O'Brian,* 540 S.W.2d 945 (Mo.App.1976). See also *Duke v. Meissner,* supra. The School Board followed the proper statutory procedures, and we find no basis for holding that the appellant's hearing was other than fair and impartial despite the fact of the pending sex discrimination case filed by her against the School Board.

Appellant urges us to pay heed to *Hortonville Dist. v. Hortonville Ed. Assoc.,* 426 U.S. 482, 96 S.Ct. 2308, 49 L.Ed.2d 1 (1976), noting that in *Hortonville,* it was said that "[t]he Fourteenth Amendment permits a court to strip" a school board of power given to it by the state legislature if the board's involvement with teachers proscribes actions consistent with due process. *Id.* at 494, 96 S.Ct. at 2315. But appellant overlooks the holding in *Hortonville* which recognizes and upholds the intrinsic power given to the school board by the state legislature to terminate a teacher's employment without violating the teacher's due process rights:

"A showing that the Board was 'involved' in the events preceding this decision, in light of the important interest in leaving with the Board the power given by the state legislature, is not enough to overcome the presumption of honesty and integrity in policymakers with decisionmaking power. *Cf. Withrow v. Larkin,* 421 U.S. at [35], 47. . . . Accordingly, we hold that the Due Process Clause of the Fourteenth Amendment did not guarantee respondents that the decision to terminate their employment would be made or received by a body other than the School Board." 426 U.S. at 497, 96 S.Ct. at 2316.

There is no evidence here of actual bias or prejudice by the School Board against appellant. The mere filing of the sex discrimination action by appellant against the School Board does not justify the finding

that a prejudice existed against appellant any more than a bias existed in *Hortonville,* where the school board—vested by the state legislature with teacher termination powers—terminated the employment of striking teachers after failing to negotiate a settlement. Here, the Missouri Legislature invested the School Board with powers to hear and terminate employment of tenured teachers. We see no reason to strip the School Board of those powers, particularly as we note that no other procedure for hearing teacher termination proceedings has been provided. Nor do we find justification for imposing some other procedure here.

◼ Appellant contends that the School Board's attorney improperly participated in the decision for terminating her employment and that the trial court erred in not permitting her to present evidence of the attorney's participation in the proceeding, thus denying her fair trial. The School Board's attorney did take active part in the proceedings, examining and cross examining witnesses. He also prepared findings of fact and conclusions of law for the trial court's consideration and gave advice on how the hearing should be conducted, He also represented all but one of the School Board members in the appellant's sex discrimination case. But these factors did not deny appellant a fair trial, nor was there evidence of unfairness in the School Board attorney's actions. The fact that the School Board's attorney actively participated in the hearing did not render the hearing unfair. *Harrisburg R–VIII Sch. Dist. v. O'Brian,* supra. We cannot assume that the School Board was improperly influenced by its attorney. *Moore v. Bd. of Ed. of Sp. Sch. Dist.,* supra.

◼ Appellant adverts to § 536.140.4 of the Administrative Procedure Act, providing in pertinent part as follows:

" . . . the court *may* in any case hear and consider evidence of alleged irregularities in procedure or of unfairness by the agency, not shown in the record." (emphasis added)

Appellant contends that by reason of the foregoing language of the Act, it was error for the trial court not to have received further evidence of the School Board attorney's involvement in the case. We find no error. Clearly, the language of § 536.140.4 does not mandate the trial court to consider further evidence; it is permissive only. *Bloom v. Missouri Board for Architects P. E. & L. S.,* 474 S.W.2d 861 (Mo.App.1971). And we find no abuse of the trial court's discretion in refusing to delve further in the matter. The School Board attorney's involvement in the case was not denied, and his conduct did not deprive appellant of a fair hearing.

◼ Finally, appellant importunes us to find that inasmuch as a portion of the hearing took place more than 30 days after notice of the hearing, it was invalid. Section 168.116.3 provides that the hearing "shall take place not less than twenty nor more than thirty days after notice of hearing has been furnished the permanent teacher." The hearing commenced on June 21, 1976, the 25th day after the notice, and went to the midnight hour, at which time appellant's attorney asked for a prorogation of the proceedings. The hearing was continued without objection[2] to June 29, 33 days after the first notice of hearing. Appellant's suggestion that she was not afforded the statutory right of hearing within 30 days of notice of hearing is destitute of merit. The hearing did commence within the 30 day period prescribed by § 168.116.3. After a full evening's hearing, and at the behest of appellant's attorney, it was continued to a date set by the School Board, 8 days later. We find that the statutory interdiction calling for a full hearing within a 30 day period from notice of hearing—if indeed any statutory violation did occur in this instance—was specifically waived by appellant. See § 536.060. Here, there was prompt continuance of hearing initially

2. It was at appellant's counsel's initiative that the hearing was continued, and it may be implied from the record that he approved the date to which the hearing was continued. Clearly, no objection was made at the time the continued hearing date was set.

commenced within the statutory period, albeit the continued hearing was held 3 days beyond the 30 day period. Our waiver ruling is not dissonant with the purpose of the hearing as stated by appellant, "to give the teacher enough time for preparation for the hearing, and not so much time that there is no early certainty of the decision." There was absolutely no prejudice to appellant resulting from the date of the continued hearing, and her interpretation and reasoning that a statutory time violation nullified the proceedings is too insular.

Judgment affirmed.

McMILLIAN, J., concurs.

KELLY, J., dissents.

KELLY, Judge, dissenting.

I respectfully dissent.

The law is clear that due process guaranteed by the Fourteenth Amendment to the Constitution of the United States requires an impartial decision maker. *Goldberg v. Kelly,* 397 U.S. 254, 271, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Case law, both federal and state, generally rejects the idea that the combination of judging and investigating functions in an administrative body is a denial of due process. *Hortonville Joint School District No. 1 v. Hortonville Education Association,* 426 U.S. 482, 96 S.Ct. 2308, 49 L.Ed.2d 1 (1976), *Harrisburg R–VIII School District v. O'Brian,* 540 S.W.2d 945, 950[5] (Mo.App.1976).

We have here, however, an issue which involves more than knowledge gleaned in a preliminary investigation to ascertain if there is cause to file charges and conduct a termination hearing. The School District, five of the six members of the Board sitting in judgment, and the Superintendent of Schools were named defendants in a Complaint filed in the Federal District Court for the Eastern District of Missouri, Eastern Division, by this teacher, following a finding of reasonable cause by the Equal Employment Opportunity Commission, charging the defendants with sex discrimination. Count I of the Complaint sought a declaration of sex discrimination, an injunction,

and damages, both actual and punitive, against all defendants. Punitive damages sought were in the amount of $100,000.00. Count II was an action under 42 U.S.C. § 1983, and Count III, one for violation of the Teacher Tenure Act. Each of these Counts sought essentially the same relief prayed for in Count I. The decision making abilities of those members of the Board who were party defendants in the lawsuit in the Federal Court might have been colored by their involvement in that suit and the possible monetary damages which could be rendered if the probable cause found by the Equal Employment Opportunity Commission is proved correct.

Prior to the commencement of the hearing, appellant sought and was denied an injunction from the Federal Court in which her Complaint was then pending to restrain the defendants from proceeding with the scheduled hearing until after trial of the cause in that Court. The court relied upon the "rule of necessity" in denying the injunction and the right of appeal under state law available to appellant from any adverse decision of the School Board, and the conclusion that the charges then pending before the School Board related to matters which allegedly occurred "long after the institution of this suit."

When the President of the School Board convened the hearing, counsel for the appellant raised the question whether the School Board could fairly try the issues in this disciplinary proceeding in view of the fact that five of the six members of the Board were defendants in the suit then pending in the Federal Court. He suggested that perhaps an opinion of the Attorney General should be requested on the question whether the Board had the authority to proceed in fairness to Miss Eddington. Counsel stated that it was his opinion that for the School Board to proceed would be violative of his client's constitutional right to a fair trial and due process under the Constitutions of the United States and the State of Missouri. Counsel for the School Board responded, stating· that this was the same argument appellant had presented to the

Federal Court and which had resulted in a ruling adverse to appellant there. Because the President of the Board concluded that this Board was the only Board "left to handle it," he ordered the hearing to proceed. This issue was again raised after the adjournment of the initial session when, on June 29, 1976, the hearing was reconvened, and the Board was again requested to disqualify itself on the ground that it was not a fair body to hear the issues. Despite appellant's entreaties, the hearing proceeded to conclusion.

The "rule of necessity" relied upon by the Federal Court is that rule which holds that where the legislature has provided for a hearing before a Board or other tribunal, and that Board is the only tribunal clothed with the power of conducting a hearing and resolving the issues, then, as a matter of necessity, where no provision is made for a substitution of personnel making up the Board or for a hearing before another administrative body, disqualification of the Board or any of its personnel will not be permitted. The reasoning for this rule is that to hold otherwise would allow the doors of justice to be barred and the wrongdoer be permitted to pursue his or her activities unchecked for lack of a forum.

The "rule of necessity" has been followed in this State. *Rose v. State Board of Registration for Healing Arts*, 397 S.W.2d 570, 575–576[4] (Mo.1965).

However, I do not believe this rule to be sacrosanct, and in a proper case the Fourteenth Amendment will permit a court to strip a Board of its decision making power where it can be demonstrated that the Board could not act consistently with due process by reason of some personal or financial stake in a matter pending before it and when a conflict of interest is clear. *Hortonville Joint School District No. 1 v. Hortonville Education Association*, supra, l. c. 491–492[4].

The crucial question here is whether the fact that the five members of this tribunal were defendants in the suit then pending in the Federal Court is a proper case for application of the "rule of necessity." Appellant has sued each of these five members of the Board for money damages—"all back wages lost including interest" and $100,000 punitive damages—because they have "engaged in unlawful employment practices with respect to plaintiff because of her sex in violation of 42 U.S.C. 2000 3 [2000C–3] et seq." The bases for her sex discrimination action were that the defendants failed to promote her, refused her merit increases in pay and demoted her. Under these circumstances can it be said that the five members of the Board did not have the kind of personal or financial stake in the outcome of this hearing which might create or furnish grounds for the belief that they cannot sit in judgment?

The cases cited by the majority opinion do not reach this point. In each, the question was, whether the fact that the Board which initiated the charges also was the Board which conducted the hearing on those charges, was disqualifying. The holding in *Hortonville,* supra, is not controlling here. The Court there merely held that a showing that the Board was involved in the collective bargaining negotiations preceding the filing of charges and the conduct of the hearing was not enough to overcome the "rule of necessity." Furthermore, in *Hortonville* there was no factual dispute for the tribunal to decide; it was admitted by the teachers that they were on strike and under Wisconsin law it was illegal for them to strike. The Supreme Court held that the decision in *Hortonville* was not an adjudicative one, 426 U.S. l. c. 495, 96 S.Ct. l. c. 2315, and "does not in the main turn on the Board's view of the 'seriousness' of the teachers' conduct or the factors they urge mitigated their violation of state law . . . The Board's decision was only incidentally a disciplinary decision; it had significant governmental and public policy dimensions as well."

Here the facts were disputed and the charges contested by the teacher. The hearing was a disciplinary one where the maximum discipline—termination—was imposed. The decision in this proceedings had no significant governmental or public policy dimensions.

I must candidly admit I have found no case holding the fact that the judge, or the tribunal, or one or more of its members, is a party to a lawsuit wherein he or it is sued for damages by the person whose rights will be subjected to decision is, thereby, per se, disqualified from proceeding in the cause.

The issue was raised in *Arnold v. McGuiness*, 289 F.Supp. 210 (D.C.N.D. of Calif. 1968) where the defendant, a judge, was being sued for an alleged violation of the plaintiff's civil rights on the ground that the judge was disqualified. The basis for his disqualification, as alleged by plaintiff, was that he acted without jurisdiction when he ordered the plaintiff to appear and show cause why he should not be held in contempt and when he subsequently issued a bench warrant for the arrest of the plaintiff upon the failure of the plaintiff to appear at the scheduled hearing on the order to show cause. Plaintiff's contention that the judge was without jurisdiction rested on the fact that at the time the order to show cause and the bench warrant were issued the plaintiff had a prior civil rights suit pending against the same judge. The defendant judge moved for dismissal of this second civil rights suit, and in sustaining that motion, the District Court, referring to § 170 of the California Code of Civil Procedure providing for disqualification of judges, said, 1. c. 210:

> "An examination of that section reveals that there is no provision for the per se disqualification for the reasons given by the plaintiff. At the most, the fact that Judge McGuiness was a defendant in a law suit brought by Mr. Arnold would only be a ground for claiming that the Judge was disqualified for bias or prejudice under Section 170(5)."

The basis for the dismissal of the civil rights action in *Arnold* was the failure of the plaintiff to comply, in the contempt proceedings, with the requirements of Section 170 of the California Code of Civil Procedure that a written statement objecting to the hearing and setting forth the facts constituting the grounds for disqualification be presented to the court and filed with the clerk at the earliest practicable opportunity.

Appellant, in her Petition for Review, raised the question of bias and prejudice on the part of the decision makers here and when her counsel appeared in the Circuit Court on August 20, 1976, he requested the Court to take evidence on the point pursuant to the provisions of § 536.140.4 RSMo. 1969, as amended Laws 1953, p. 679, § 2. The Circuit Court denied this request. In so doing I believe it erred to the prejudice of the appellant, and I would reverse the judgment of the Circuit Court and remand the cause for an evidentiary hearing on this point.

Our Administrative Review Act makes no provision for a de novo proceeding, nor is there any provision for the School Board which recognizes that it cannot be an impartial decision maker as constitutionally contemplated to obtain an authorized impartial hearing officer or decision maker to sit in its place. This deficiency could be cured by appropriate legislative action.

The Wisconsin Supreme Court, when faced with this dilemma found authority under the Wisconsin Constitution, § 9, Art. 1, to fashion an adequate remedy. It held that the School Board should make the initial determination as to the firing of a teacher. However, in those situations where the teacher was discharged or otherwise disciplined and due process was required, and the School Board was in an adversary position, it provided for the dissatisfied teacher to file a petition and thereby obtain a *de novo* determination of all issues in any court of record in the county where the School Board or a part of it is located. The issues were to be determined by the court without a jury, unless the judge determined to call an advisory jury. The court was to resolve any factual disputes and provide for a reasonable disposition of the action. *Hortonville Education Ass'n. v. Hortonville Joint School District No. 1,* 66 Wis.2d 469, 225 N.W.2d 658, 673 (1975).

While I would not necessarily be averse to following the lead of the Wisconsin Su-

preme Court in fashioning a procedure for resolving this issue, I am of the opinion that with the case in this posture it is the better procedure to remand the cause to the Circuit Court for a determination of the question whether the School Board was disqualified by reason of bias or prejudice and to permit the parties to present evidence on this issue, pursuant to the authority of § 536.140.4 RSMo.1969, as amended Laws 1953, p. 679, § 2.