THE STATE v. JULIAN C. WOLFNER, Appellant.—2 S. W. (2d) 589.

Court en Banc, February 4, 1928.

*Lewis H. Cook, W. C. Irwin, N. T. Cave, Charles G. Revelle* and *Abbott, Fauntleroy, Cullen & Edwards* for appellant.

*North T. Gentry,* Attorney-General, and *George W. Crowder,* Assistant Attorney-General, for respondent; *Paul Barnett* of counsel.

RAGLAND, J.—On the 13th day of November, 1924, a prosecution was instituted against the defendant in the Circuit Court of Cole County by the filing therein of an information charging him with knowingly and wilfully exhibiting to the Assistant Commissioner of Finance of the State of Missouri a certain false paper with the intention of deceiving him. The venue of the cause was changed to Callaway County, and on a trial thereof in the circuit court of that county the defendant was convicted and sentenced to imprisonment in the State Penitentiary for a term of seven years. From such judgment he was allowed an appeal to this court. The cause was first heard in Division No. 2; subsequently that division transferred the cause to the Court en Banc, where it was argued and submitted a second time. Under that submission it is now for final disposition.

It is insisted by the State that none of the assignments in the motion for a new trial, twenty-eight in number was sufficiently definite and specific to preserve for review the questions briefed and argued in this court. Among the assignments, however, we find:

"(1) The court erred in overruling the motion to quash the amended information.

"(10) There is no substantial evidence to support the verdict.

1074

"(19) The court erred in refusing to give to the jury defendant's peremptory Instruction No. X (a demurrer to the evidence) at the close of all the evidence as asked for by the defendant."

Either "10" or "19" was sufficient to preserve for appellate review the question of the sufficiency of the evidence to support the verdict. And of course it is our duty to pass upon the sufficiency of the information regardless of whether or not it was challenged in the trial court. We will look to the information first.

The information charged that the paper therein alleged to have been exhibited to the Assistant Commissioner of Finance was false in thirteen different particulars, each of which was specified and set forth in a separate numbered paragraph. At the close of all the evidence the trial court withdrew from the consideration of the jury each of the specifications, except those numbered 5, 8 and 13, by separate instructions in the following form:

"Now at the close of all the evidence in the case the court instructs the jury that specification No. . . . reading as follows, to-wit: . . . is withdrawn from your consideration and on it you cannot find the defendant guilty.

The specifications so withdrawn in no way aided the remaining averments of the information in the respects in which we shall presently consider them. Omitting the withdrawn specifications and also some of the formal allegations which have no bearing on the questions to be considered, the information upon which the cause was tried, and under which defendant was convicted, is as follows:

"Sam S. Haley, Prosecuting Attorney, etc., upon his oath informs the court that on or about the 16th day of February, 1922, and for a time theretofore and thereafter, one B. T. Hurwitz, was the duly appointed, qualified and acting Assistant Commissioner of Finance of the State of Missouri, that as such Assistant Commissioner of Finance the said B. T. Hurwitz was fully authorized to examine into the affairs of persons, companies and corporations, including foreign and domestic investment companies, who sought by application to the said Department of Finance to obtain permission to sell their stocks, bonds and other securities within the State of Missouri; that for the purpose of determining whether such permission should be granted it was the duty of said B. T. Hurwitz as such Assistant Commissioner of Finance and within his authority, to examine into the affairs of such persons, companies and corporations so as to determine whether they were financially solvent and qualified to sell and dispose of their securities within said State.

"That the defendant, Julian G. Wolfner, on or about the 16th day of February, 1922, aforesaid, at the County of Cole in the State of Missouri, for the purpose and with the intention of deceiving the said B. T. Hurwitz and preventing him, the said B. T. Hurwitz from

learning the truth concerning the financial condition of the Standard Crate & Filler Company, a foreign investment company duly incorporated under the laws of the State of Delaware, did then and there knowingly, wilfully and feloniously exhibit to the said B. T. Hurwitz, Assistant Commissioner of Finance, aforesaid, a certain false paper, to-wit, the application of the said Standard Crate & Filler Company for permission to sell 100,000 shares of common stock within the State of Missouri; . . . that said paper and application was then and there presented to the said B. T. Hurwitz by the defendant Julian G. Wolfner, on behalf of the said Standard Crate & Filler Company, feloniously for the purpose of deceiving him, the said B. T. Hurwitz, in his determination, of the qualifications and fitness of the said Standard Crate & Filler Company to sell its stock in the State of Missouri, he, the said Julian G. Wolfner, then and there well knowing said paper and application to be false in the following particulars, to-wit:

. . .

" (5) The representation and statement contained in said application that all of the officers and directors of the corporation, with the exception of Chas. LeFleur, owned only one share of stock in said corporation; whereas, in truth and in fact, some of them owned a large number of shares of stock in said corporation. . . .

" (8) The representation and statement contained in the 14th item of said application wherein it is shown that Albert W. Happy is the owner of but one share of stock; Chas. E. LeFleur 99,989 shares; Chas. Tweedie 1 share; Houck McHenry 1 share; and Julian G. Wolfner 1 share; whereas, in truth and in fact the said Albert W. Happy, Chas. Tweedie, Houck McHenry and Julian G. Wolfner were not the owners of just a single share; but were in truth and in fact each the owner of a large number of shares, and the said Chas. E. La-Fleur was not the owner of 99,989 shares. . . .

" (13) Exhibit 'A' attached to said application and made a part thereof, purports and represents to be a true statement of the list of the then stockholders, and the number of shares owned by each; whereas, in truth and in fact, said statement is and was then and there false, in that there were other stockholders in said corporation whose names are not set out in said exhibit; and, further, A. W. Happy, Julian G. Wolfner, Houck McHenry, Joseph Pope and Charles Tweedie, and divers other persons, each owned far in excess of one share, as represented and shown in said exhibit; against the peace," etc.

The crime with which the information purports to charge the defendant is defined by Section 11930, Revised Statutes 1919. The relevant portions of that and cognate sections are as follows:

Sec. 11920. "Before offering or attempting to sell any stocks, bonds or other securities of any kind or character other than those specifically exempted in Section 11919 to any person or persons or trans-

1076

acting any business whatever in this state, excepting that of preparing the document hereinafter required, every such investment company, domestic or foreign, shall file in the office of the bank commissioner of this state, together with a filing fee of twenty-five dollars, the following documents to-wit: A statement showing in full detail the plan upon which it proposes to transact business. A copy of all contracts, bonds or other instruments which it proposes to make with or sell to its contributors. A statement which shall show the name and location of the investment company, and an itemized account of its actual financial condition, and the amount of its property and liabilities, and such other information touching its affairs as said bank commissioner may require.''

Sec. 11923. "It shall be the duty of the bank commissioner to examine the statements and documents so filed . . . ; and if he finds that such investment company is solvent, that its articles of incorporation or association, its constitution and by-laws, its proposed plan of business and proposed contract contain and provide for a fair, just and equitable plan for the transaction of business, the bank commissioner shall issue to such investment company a statement reciting that such company has complied with the provisions of this article. . . .''

Sec. 11930. "Any person who shall knowingly or wilfully . . . exhibit any false paper with the intention of deceiving any person authorized to examine into the affairs of such investment company . . . shall be deemed guilty of a felony. . . .''

I. The sections set out in part in the preceding paragraph, which were parts of the Act of 1913 known as the "Blue Sky Law," were repealed in 1923 (Laws 1923, p. 218); and until now this court has not had occasion to construe Section 11930. It is a cardinal doctrine: That whatever is newly created by statute draws to itself the same qualities and incidents as if it had existed at common law; in other words, the statute is to be interpreted after the rules and incidents of the common law. [Bish. on Stat. Crim. (3 Ed.) sec. 129.] Many of such rules and incidents, applicable to the statute here, may be found in the interpretations which have been placed on analogous statutes relating to false pretenses. There is, however, one broad distinction between the false pretense statutes and this one. To constitute an offense under the former it is necessary for the person defrauded to have been actually deceived and to have been deprived of the possession of his property by reason of the deception. But under the statute we are now considering the crime is complete when the false paper is exhibited with the specific intention of deceiving, regardless of whether any one is in fact deceived. Evidently the primary object of the statute is to punish the one who in the manner specified intentionally attempts to deceive;

the protection of the public, so far as this section is concerned, is incidental. There may be other distinctions of a minor character between the statute under construction and the statutes on false pretenses, but on principle there can be no reason why.the rules which determine what "false pretenses" are inhibited by the latter should not also be applied in characterizing the "false paper" falling within the purview of the former. With respect to a "false pretense" it is universally held that, if it consists of a representation, it must be one of a material fact. [Kranz v. Lewis, 100 N. Y. Supp. 674; 25 C. J. 592 and cases cited in Note 95.] So with a "false paper." If it consists of a false statement of fact, the fact must be a material one. Conversely, if the statement is with reference to a fact having no relation whatever to any matter which the Bank Commissioner is required to take into consideration in determining whether he will grant a permit to an investment company to sell its stocks and bonds, then the document·is not a "false paper" within the intendment of the statute. The Legislature could have had no concern about the ·Bank Commissioner being deceived, except as to matters which they said should be determinative of his official action.

Let us next examine the information in the light of the principle of materiality just referred to, keeping in mind also the pertinent provisions of the "Blue Sky Law" of 1913. The alleged falsity of the paper, as set forth in specifications 5, 8 and 13, consists of this: (1) There were other stockholders than those named in the list of stockholders; (2) A. W Happy, Julian G. Wolfner, Houck McHenry, Joseph A. Pope, Charles Tweedie and other persons, who were represented as owning but one share each, in fact owned, each of them, a greater number of shares than one; and (3) Charles A. LaFleur did not own as many as 99,989 shares, as was stated. What influence did this falsity have, or what could it properly have had, in determining the action of the Assistant Commissioner of Finance? Under the statute it was his duty to ascertain whether the company in whose behalf the paper was presented was solvent, and whether its articles of association and by-laws, its proposed plan of business and proposed contract, contained and provided a fair, just and equitable plan for the transaction of business. Now what bearing could the fact that there were other stockholders than those listed, or the fact that Happy and others had each more than one share of stock (how many more is not disclosed), or the fact that LaFleur owned some less number of shares than 99,989, or all of them combined, have had on the question of the company's solvency or that of the fairness and equitableness of its proposed plan for the transaction of business? On their face, and standing alone, they could have had none whatever. There may have·been other facts which would have disclosed the materiality of those averred, but, if so, they should have been alleged. For the purpose of determining

the sufficiency of the information what is not alleged therein does not exist. So far as the information discloses, the paper therein described is not a false paper within the meaning of the statute.

II. The information is subject to criticism in another respect. In alleging that the representations were untrue, in informations drawn under the false pretenses statutes, general words of **Defective** negation are frequently inadequate. It is often nec-**Charge:** essary to state the particulars of the falsity in order **Unnamed** **Stockholders.** that the defendant may be properly informed of the issues he is required to meet. [3 Bish. New Crim. Proc. (2 Ed.) sec. 168.] On the trial of this cause the State, in support of its allegation that there were other stockholders than those listed in the paper, introduced evidence tending to show that each of a number of individuals, by reason of some transaction had with an agent of the company, was a stockholder, notwithstanding no certificate of stock had been issued to him. In not setting out the names of such persons, claimed by the State to have been stockholders and to have been omitted from the list, the information did not sufficiently advise the defendant of the issues he would have to meet. [State v. Stowe, 132 Mo. 199, 33 S. W. 799.]

III. The evidence failed to show, as the information failed to aver, any facts from which an inference could be properly drawn that the alleged falsities of the paper were in any respect material in the determination of the questions of whether the investment company was solvent and whether its proposed plan of transacting business was fair, just and equitable. For that reason it was insufficient.

The judgment of the circuit court is reversed and the cause remanded.

*White, Graves* and *Gantt, JJ.,* concur; *Blair, J.,* concurs in Par. I and the result; *Walker, C. J.,* and *Atwood, J.,* dissent.