**Opinion filed September 2, 2010**



## In The

# Eleventh Court of Appeals

_____

### No. 11-09-00026-CV
_____

### TIFFANY DAWN O'QUIN, Appellant

### V.

### JAMES RICHARD HEATHCOCK, Appellee

**On Appeal from the 393rd District Court**

**Denton County, Texas**

**Trial Court Cause No. 2006-61191-393**

### M E M O R A N D U M   O P I N I O N

This is a child custody dispute.  The trial court granted the parties a divorce, named them joint managing conservators of their two children, and granted James Richard Heathcock the right to determine the children's primary residence.  We affirm.

I. *Background Facts*

Heathcock and Tiffany Dawn O'Quin were married and had two children, R.H. and C.H. Heathcock filed for divorce.  The trial court signed temporary orders that appointed the parties temporary joint managing conservators of the children and gave Heathcock the right to designate the children's primary residence.  At the time of trial, R.H. was six years old and in kindergarten. C.H. was two years old.  The trial court conducted a bench trial and entered a divorce decree that

gave Heathcock the right to designate the children's residence and gave O'Quin scheduled visitation that varied in some ways from the standard possession order.

## II. *Issues*

O'Quin challenges the trial court's judgment with three issues. She contends first, that the trial court treated the trial as a modification proceeding rather than an initial determination and that this imposed a heightened burden of proof upon her; second, that the trial court abused its discretion by granting Heathcock the right to determine the children's residence; and finally, that the trial court abused its discretion by not granting her overnight possession of the children during the second and fourth weeks of the month.

## III. *Discussion*

### A. *Burden of Proof.*

O'Quin argues that the trial court improperly imposed a higher burden of proof upon her because it treated the trial as a modification proceeding rather than an initial determination. To substantiate this contention, she alleges that maintaining the status quo was one of only two reasons advanced by Heathcock in support of his request to determine the children's primary residence, and she points to the trial court's statement at the conclusion of trial that "I'm going to leave the father as the primary joint managing conservator."

Heathcock contests the characterization of his case; but, regardless, one party's trial strategy does not delineate the burden of proof imposed by the trial court. Moreover, the trial court's concluding statement was not a statement of law but was simply an informal, shorthand description of its holding. We note in this regard that, at the very beginning of the trial when O'Quin's counsel tried to discuss the temporary orders, the trial court interjected: "I'm not going to – I'm not – I'm going to hear evidence and decide what's best." The trial court did not impose a heightened burden of proof, and Issue One is overruled.

### B. *Sufficiency of the Evidence.*

O'Quin contends in her second issue that the trial court abused its discretion by granting Heathcock the right to determine the children's primary residence because there was insufficient evidence to support the trial court's finding of fact that this would serve the children's best interest. This requires that we employ a two-pronged inquiry: (1) did the trial court have sufficient information upon which to exercise its discretion and (2) did the trial court err in its application of discretion? *In re J.A.H.*, 311 S.W.3d 536, 540 (Tex. App.—El Paso 2009, no pet.). The traditional sufficiency inquiry applies to the first question. *Lindsey v. Lindsey*, 965

2

S.W.2d 589, 592 (Tex. App.—El Paso 1998, no pet.). Once we have determined whether sufficient evidence exists, we must then decide whether the trial court made a decision that was neither arbitrary nor unreasonable.

In considering a legal sufficiency or "no evidence" point, we consider the evidence in the light most favorable to the verdict and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). Even if evidence is undisputed, it is the province of the trier of fact to draw from it whatever inferences it wishes so long as more than one inference is possible. *Id.* at 821. But if the evidence allows only one inference, neither the trier of fact nor the reviewing court may disregard it. *Id.* The trier of fact is the sole judge of the credibility of the witnesses and the weight to give their testimony. *Id.* at 819. When there is conflicting evidence, it is the province of the trier of fact to resolve such conflicts. *Id.* at 820. In every circumstance in which a reasonable trier of fact could resolve conflicting evidence either way, the reviewing court must presume it did so in favor of the prevailing party and disregard any conflicting evidence. *Id.* at 821.

A factual sufficiency point requires examination of all of the evidence to determine whether the finding in question is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 244 S.W.2d 660 (Tex. 1951). The reviewing court cannot substitute its conclusions for those of the trier of fact. If there is sufficient competent evidence of probative force to support the finding, it must be sustained. *Carrasco v. Goatcher*, 623 S.W.2d 769 (Tex. App.—El Paso 1981, no writ). It is not within the province of this court to interfere with the trier of fact's resolution of conflicts in the evidence or to pass on the weight or credibility of the witness's testimony. *Benoit v. Wilson*, 239 S.W.2d 792 (Tex. 1951). In a bench trial, findings of fact are the equivalent of a jury answer to the special issues. *Associated Tel. Directory Publishers, Inc. v. Five D's Publ'g Co.*, 849 S.W.2d 894, 897 (Tex. App.—Austin 1993, no writ).

The term "abuse of discretion" is not susceptible to rigid definition. *Lindsey*, 965 S.W.2d at 591. The test is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action, but whether the court acted without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985). Stated differently, the appropriate inquiry is whether the ruling was arbitrary or unreasonable. *Smithson v. Cessna Aircraft Co.*, 665 S.W.2d 439, 443 (Tex. 1984). The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner

than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Sw. Bell Tel. Co. v. Johnson*, 389 S.W.2d 645, 648 (Tex. 1965).

Texas courts traditionally use a non-exhaustive list of factors, known as the *Holley* factors, when determining the best interest of the children.[1] The original *Holley* decision was a termination case, but the factors still provide a relevant framework for our analysis.

The children were too young to testify, but O'Quin contends that R.H. expressed a preference for living with her because he complained that it is unfair for Heathcock to have eleven days custody and her only three. But, she conceded that she did not know how R.H. would feel if this were reversed.

O'Quin argues that the children's emotional and physical needs would best be served by having her designate their primary residence, and she points to the children's young ages and the fact that Heathcock agreed to additional Saturday visitation, that she had a large house that she shared with her sister and niece, and that she had family members to help watch the children. O'Quin also points to a court-ordered social study performed by Jo Anne Nowick Oliver. Oliver described Heathcock as a good father, concerned about the children, and O'Quin as a good parent and loving mother. Oliver recommended that O'Quin be given the right to designate the children's residence and explained that this was due, in part, to their young ages.[2] Finally, O'Quin believes that R.H. needs counseling because of behavioral issues and that C.H. needs additional help because of delayed development, but Heathcock disagrees and, thus, they are not receiving needed help.

Heathcock points out that Oliver's evaluation gave a preference to O'Quin because she is a woman and that this runs counter to Texas law. *See* TEX. FAM. CODE ANN. § 153.003 (Vernon 2008) (when determining conservatorship and possession issues, trial courts shall consider the

---

[1]*Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). These factors are: (1) the desires of the children; (2) the emotional and physical needs of the children now and in the future; (3) the emotional and physical danger to the children now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the children; (6) the plans for the children by the individuals seeking custody; (7) the stability of the home; (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not proper; and (9) any excuse for the acts or omissions of the parent.

[2]Oliver testified:

A. And I additionally have a lot of background in child development, so I think that primary conservatorship should also be pinned on the developmental stages of the kid.

Q. And what does that mean?

A. To me that means they're pretty young. That's why I opted for them to have primary conservatorship remain with the mother till they get a little older.

qualifications of the parties without regard to the sex of the party or child). Heathcock called R.H.'s teacher and school counselor as witnesses. Diane Kenyon is R.H.'s kindergarten teacher. She testified that R.H. was doing great in school, and that she did not see any need for him to go to counseling. R.H.'s school counselor, Leticia Otero, testified that counseling might cause R.H. more harm than good. C.H. was adopted. Heathcock testified that he was concerned about C.H.'s limited speech but that C.H.'s biological sister was also slow to start speaking, and he believed that C.H. was making progress.

Neither party described the other as a bad parent, but both believed that they were a better parent. O'Quin complains that Heathcock did not get the children involved in appropriate activities, such as sports, but that she intended to do so. She noted that she had talked to counselors about handling R.H.'s behavior and that she intended to enroll R.H. in a school near her home that she believed would be better than the one he was currently attending because of its smaller class sizes. Heathcock points out that O'Quin committed adultery, that she is in counseling and has taken medication for depression, that she has admitted to drinking alcohol at work, and that her boyfriend has drank at work and then driven her home. He contrasted this by describing his children's normal daily schedule, including activities such as going to the park, playing tee ball, doing homework, taking naps, and watching movies. Finally, the trial court had the benefit of R.H.'s experience at school while living primarily with Heathcock.

O'Quin was critical of an individual who lived with them during the marriage and helped watch the children when they were at work. She successfully requested a provision in the temporary orders prohibiting this individual from being around the children. She complained at trial that this provision was violated. Heathcock did not respond to O'Quin's allegation at trial but points out in his brief that the trial court also prohibited allowing an unrelated adult with whom either party has an intimate or dating relationship to remain overnight in the same residence as the children and that O'Quin admitted at trial that one night her boyfriend slept in the same house as her and the children.

The trial court had sufficient information with which to exercise its discretion. The evidence indicates that both parties are loving, caring parents and that each has the children's best interest at heart. Because the trial court had conflicting evidence and because that evidence could be resolved in favor of either party, we cannot conclude that the trial court abused its discretion by granting Heathcock the right to determine the children's residence. Issue Two is overruled.

*C. Overnight Visitation.*

O'Quin contends in her third issue that the trial court abused its discretion by not granting her overnight possession during the second and fourth weeks of each month. Heathcock and O'Quin were both employed as bartenders at Cowboy's Red River. O'Quin works Thursday, Friday, and Saturday nights from 6:30 or 7:30 until 3:00 the following morning. The trial court varied from the standard possession order to accommodate her work schedule and the children's young ages. O'Quin was given possession of the children on the first, third, and fifth Fridays of the month beginning when school ends, or at 3 p.m. when school was not in session, and ending at 7 p.m. the following Monday. She was also given possession on the second and fourth Mondays beginning at 3 p.m. and ending at 7 p.m.

Heathcock responds that O'Quin did not request overnight visitation before or during trial and, therefore, has not preserved this issue. We agree. Texas public policy encourages frequent contact between children and their parents to optimize the development of a close and continuing relationship between each parent and child. TEX. FAM. CODE ANN. § 153.251(b) (Vernon 2008). For parents who reside 100 miles or less apart, the legislature has provided a visitation schedule that divides weekends and holidays and provides for weekday and vacation visitation. TEX. FAM. CODE ANN. § 153.312(a) (Vernon Supp. 2009). This provision has been amended since trial.[3] The statute in effect at the time of trial required a possessory conservator requesting overnight visitation to make an election before or at the time of the rendition of the original or modification order. O'Quin points us to no such election, and none is contained within the record. Moreover, we note that O'Quin received longer periods of visitation than required by the standard visitation order and that, by moving her weekday visitation from Thursday to Monday, she was freed from a work conflict. Issue Three is overruled.

IV. *Conclusion*

The judgment of the trial court is affirmed.

RICK STRANGE

September 2, 2010                                                 JUSTICE

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.

---

[3]Act of May 27, 2009, 81st Leg., ch. 1113, § 6 (eff. Sept. 1, 2009).

6